[No. D045150. Fourth Dist., Div. One. Sept. 8, 2005.]

PROPERTY OWNERS OF WHISPERING PALMS, INC., Plaintiff and Appellant, v.
NEWPORT PACIFIC, INC., et al., Defendants and Respondents.

## COUNSEL

L. Sue Loftin and Avneet Sidhu for Plaintiff and Appellant.

Worden Williams, Tracy R. Richmond, Terry M. Gibbs and Malinda R. Dickenson for Defendants and Respondents.

OPINION

McINTYRE, J.—An association of residents in two standard subdivisions (i.e., those not having any areas of common ownership) sued the developer that retained control over the architectural committees responsible for enforcing the subdivisions' declarations of restriction (CC&R's), seeking in part to validate its attempts to wrest that control away from the developer. This appeal from a judgment in favor of the developer, the architectural committees and certain others raises two primary issues: (1) whether the association lacks standing to sue because its membership included residents of another subdivision that would not have standing to assert such claims in their own right, and (2) whether the requirements of California Code of Regulations, title 10, section 2792.28 (Regulation 2792.28) relating to a developer's obligation to turn over control of an architectural committee to subdivision homeowners are inapplicable to standard subdivisions. We hold that the association's membership does not preclude its standing to sue, but that the association cannot assert causes of action based on Regulation 2792.28 because the regulation is inapplicable in the context of a standard subdivision.

## FACTUAL AND PROCEDURAL BACKGROUND

The Whispering Palms community is a multi-use housing development in Rancho Santa Fe that consists of three standard single-family home subdivisions known as Greens Nos. 1, 2 and 3, respectively. The subdivisions were developed by Newport Pacific, Inc., or its predecessor in interest (Newport Pacific, Inc., and its principal, Richard Cavanaugh, are referred to collectively as the Developer).

Each of the subdivisions has its own CC&R's. Since the late 1970's, the owners of the homes in Greens No. 1 have elected the members of the architectural committee that is responsible for the enforcement of the CC&R's for their subdivision. By contrast, pursuant to the CC&R's applicable to Greens Nos. 2 and 3, the Developer (or its predecessor in interest) appointed the original members of the architectural committees responsible for enforcing the CC&R's for those subdivisions (the Architectural Committees). The Greens Nos. 2 and 3 CC&R's authorize the members of the Architectural Commmittees to designate the successors for any members who die or resign and provide that the Develpers's consent is required to amend the CC&R's.

In 1971, residents of Greens Nos. 1, 2 and 3 formed Property Owners of Whispering Palms, Inc. (the Association), the primary purpose of which was to "provide a mechanism whereby the members of the corporation can collectively solve social welfare problems facing them as property owners in the Whispering Palms development . . . ." At some point, residents of Greens

Nos. 2 and 3 became dissatisfied with how the Architectural Committees were enforcing the applicable CC&R's and they tried to convince the Developer to give them control over the Committees' membership; however, the Developer rebuffed the residents' requests.

In December 2001, certain members of the Association spearheaded an effort to revise the Association's articles of incorporation and bylaws and to create a revised and unified set of CC&R's that would govern both Greens Nos. 2 and 3. The revised bylaws provided that only the residents of Greens Nos. 2 and 3 would be members of the Association and the revised CC&R's provided the Association's board with the sole authority to appoint the members of the new architectural committee that would be responsible for enforcement of the CC&R's in Greens Nos. 2 and 3.

In early 2002, the Greens Nos. 2 and 3 homeowners who were Association members voted overwhelmingly to approve the revised Association articles and bylaws and the revised CC&R's. Although the Developer owned four of the 104 lots in Greens No. 2 and seven of the 53 lots in Greens No. 3, it declined to participate in the voting process, and later refused to relinquish control of the Architectural Committees, contending that the revised governing documents were not validly adopted in accordance with the requirements of the existing CC&R's and California law. The Association disagreed, asserting that the Developer's ability to control the governing documents was greatly restricted by the adoption of Regulation 2792.28 in 1976.

The Association filed this action in May 2002 on behalf of the owners of homes in Greens Nos. 2 and 3 against the Developer, seeking declaratory relief regarding the application of Regulation 2792.28, quiet title, breach of process of amendment and injunctive relief. The Developer demurred to the complaint on numerous grounds; as relevant here, it contended that Regulation 2792.28, which was the basis for the Association's breach of process and injunctive relief claims, was inapplicable since Greens Nos. 2 and 3 were not common interest developments. The Association opposed the demurrer, arguing that Regulation 2792.28 was equally applicable to all subdivisions, whether in the nature of a common interest development or not. The court sustained this demurrer with leave to amend and the Association filed a petition for a writ of mandate in this court, seeking to challenge the superior court's holding that Regulation 2792.28 was inapplicable to standard subdivisions. This court summarily denied the petition.

After another round of pleadings and demurrers, the Association filed a second amended complaint in June 2003, which reasserted many of the prior claims, added claims to reform the original CC&R's for Greens Nos. 2 and 3 and for an accounting, and named the Architectural Committees and the

individual members of those Architectural Committees as defendants (collectively the defendants). The individual committee members demurred to the second amended complaint on the ground that it failed to allege facts establishing liability on their part. Before the court ruled on the demurrer, the Association dismissed two of the individual members, leaving Cavanaugh and his wife as the only remaining committee members named as defendants. The court took the demurrer off calendar as to the dismissed defendants and sustained the Cavanaughs' demurrer as to all causes of action.

After the Association filed its third amended complaint for declaratory relief relating generally to unfair enforcement of the Greens Nos. 2 and 3 CC&R's, the Developer and the Architectural Committees moved for summary judgment on the ground that the evidence showed that the Association's membership included at least some residents of Greens No. 1, who did not have standing to bring claims in their own right, and that this precluded the Association's standing in accordance with *Hunt v. Washington State Apple Advertising Comm'n* (1977) 432 U.S. 333 [53 L.Ed.2d 383, 97 S.Ct. 2434] (*Hunt*). The Association opposed the motion, arguing that, after the adoption of the Association's revised articles and bylaws, the residents of Greens No. 1 were no longer members of the Association and, even if those revised articles and bylaws were invalid, it nonetheless had standing under established law.

The court granted the motion for summary judgment. It found that there was no triable issue of fact as to whether the Association had standing to sue because (1) the revised articles and bylaws, which purported to remove the Greens No. 1 residents from Association membership, were invalid because the Greens No. 1 residents were not given the opportunity to participate in the 2002 vote and (2) thus the previously existing articles and bylaws, which provided that the Greens No. 1 residents were members, governed. The court concluded that because the evidence showed the Association's members included residents of Greens No. 1, the Association lacked standing to sue and it entered judgment in the defendants' favor in June 2004.

## DISCUSSION

### 1. *Standing*

■ " '[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " (*Independent Roofing Contractors v. California Apprenticeship Council* (2003) 114 Cal.App.4th 1330, 1341 [9 Cal.Rptr.3d 477], quoting *Warth v. Seldin* (1975) 422 U.S. 490, 499 [45 L.Ed.2d 343, 95 S.Ct. 2197] (*Warth*).) However, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." (*Warth,*

*supra,* 422 U.S. at p. 511.) "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." (*Hunt, supra,* 432 U.S. at p. 343; see *Brotherhood of Teamsters & Auto Truck Drivers v. Unemployment Ins. Appeals Bd.* (1987) 190 Cal.App.3d 1515, 1521–1522 [236 Cal.Rptr. 78].)

■ The defendants contend that the Association includes residents of Greens No. 1, who do not have any interest in the claims being asserted in this action, and that accordingly, the Association lacks standing to sue because some of its members would not have standing to bring this action in their own right. However, this argument misconstrues the law. The United States Supreme Court has repeatedly recognized that an association has standing to sue when " 'its members, *or any one of them,* are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.' " (*Hunt, supra,* 432 U.S. at p. 342, (italics added), quoting in part *Warth, supra,* 422 U.S. at p. 511; see *Automobile Workers v. Brock* (1986) 477 U.S. 274, 286 [91 L.Ed.2d 228, 106 S.Ct. 2523] [recognizing that the first prong of *Hunt* is met when at least some members of the association would have standing to sue in their own right]; see also *Associated Gen. Contractors of Cal. v. Coalition* (9th Cir. 1991) 950 F.2d 1401, 1408–1409.) Pursuant to these authorities, the fact that the Association's membership includes residents of Greens No. 1 does not prevent the Association's standing to bring this action on behalf of residents of Greens Nos. 2 and 3.

The defendants urge us not to consider whether the law requires that all members of an association have the right to sue in order to establish the association's standing because the issue was not raised below. This argument, however, is a bit disingenuous given that (1) the motion for summary judgment was based solely on the argument that the Association lacked standing because its members included residents of Greens No. 1, and (2) the trial court granted summary judgment on the ground that the "property owners in Greens [No.] 1 do not have 'standing to sue in their own right.' " Further, the Association did argue, as it does now, that the inclusion of residents of Greens No. 1 does not preclude standing. The argument was clearly not only raised, but also relied on, below and thus the issue is properly before us on appeal.

■ The defendants also argue that, even if the Association can satisfy the first requirement of *Hunt,* we should in any event uphold the trial court's ruling because it cannot satisfy two other requirements that are necessary to

establish association standing under *Hunt.* A trial court's decision to grant summary judgment is subject to de novo review on appeal; thus we review the trial court's ruling, not its rationale, and must uphold the judgment if it is correct *on any theory supported by the record.* (See *Isaac v. City of Los Angeles* (1998) 66 Cal.App.4th 586, 594–595 [77 Cal.Rptr.2d 752].) Here, however, the parties did not brief or provide any evidence relating to whether the second and third prongs of *Hunt* had been met and thus the record does not permit us to rely on these proffered alternatives as bases for affirming the trial court's decision.

For the foregoing reasons, we conclude that the trial court erred in granting summary judgment as to the causes of action alleged in the Association's third amended complaint (i.e., for declaratory relief, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, breach of agreement, quiet title, accounting and injunctive relief) and accordingly, we reverse the judgment in favor of the Developer and the Architectural Committees as to those causes of action.

## 2. *Applicability of Regulation 2792.28*

The Association's original complaint included a claim for declaratory relief that sought in part a declaration that although the Greens Nos. 2 and 3 CC&R's required the Developer's approval for modifications thereto, Regulation 2792.28 invalidated that provision and accordingly the Developer no longer had the authority to approve or disapprove modifications to those CC&R's. The Association appeals the trial court's ruling sustaining the defendants' demurrer to its original declaratory relief cause of action based on the conclusion that Regulation 2792.28 was inapplicable to Greens Nos. 2 and 3.

Regulation 2792.28 is one of the implementing regulations for the Subdivided Lands Act (Bus. & Prof. Code, §§ 11000–11200 (the Act)), which creates rules applicable to the sale of land within a subdivision that consists of five or more parcels to be sold or leased. (Bus. & Prof. Code, § 11000.) (All further statutory references are to the Business and Professions Code except as otherwise noted.) The Act is a consumer protection statute intended primarily to prevent "fraud and sharp practices" by requiring disclosure of all relevant information to potential purchasers and lessees of subdivision lots in a project of five or more units. (*In re Sidebotham* (1938) 12 Cal.2d 434, 436 [85 P.2d 453]; see also §§ 11000, 11004.5.) It sets forth an elaborate reporting process and requires full and complete public disclosure of information regarding a subdivision offering. (See § 11000 et seq.) The Act applies to standard subdivisions (i.e., subdivisions that do not have any commonly

owned areas), as well as to subdivisions that are common interest developments. (§ 11000; 9 Miller & Starr, Cal. Real Estate (3d ed. 2001) § 25:6, p. 18.)

■ Pursuant to the Act, a subdivider to which the Act applies must obtain a "public report" from the California Real Estate Commissioner (the Commissioner) regarding the subdivision and give the report to a prospective purchaser or lessee before engaging in a sale or lease of a subdivision interest. (§§ 11018.1, subd. (a), 11018.2.) To obtain a public report, the subdivider must file with the Commissioner an application, consisting of a notice of intention and a questionnaire. (§ 11010; Cal. Code Regs., tit. 10, § 2790.) The Act and its implementing regulations require specified information in an application for a public report relating to a standard subdivision. (§ 11010; Cal. Code Regs., tit. 10, § 2792, subd. (a)(1)–(18).) An application relating to a common interest development must include the same information as required for a standard subdivision plus additional information. (Cal. Code Regs., tit. 10, §§ 2792.1, subd. (a)(1)–(17), 2792.21, subd. (b)(1).)

■ The Act sets forth special requirements that must be met before the Commissioner will issue a public report relating to a common interest development. One of those special requirements is that the Commissioner must find that "[r]easonable arrangements have been made for delivery of control over the subdivision . . . to the purchasers of lots . . . in the subdivision" and that "[r]easonable arrangements have been or will be made as to the interest of each of the purchasers of lots . . . in the subdivision with respect to the management, maintenance, preservation, operation, use . . . and control of their lots . . . and such other areas or interests . . . as have been or will be made subject to the plan of control proposed by the owner and subdivider . . . ." (§ 11018.5, subds. (d), (e).) The Act does not require similar findings as a condition to the issuance of a public report for a standard subdivision.

In furtherance of these special requirements relating to the issuance of a public report for a common interest development, the regulations provide that "[t]he Commissioner will ordinarily consider provisions of the governing instruments proposed for a common-interest subdivision to constitute 'reasonable arrangements' . . . if the provisions are in substantial conformance to the applicable standards" set forth elsewhere in the regulations, including Regulation 2792.28. (Cal. Code Regs., tit. 10, § 2792.8, subd. (b).) Regulation 2792.28 is titled Reasonable Arrangements—Architectural and Design Control and provides:

"(a) The committee for the control of structural and landscaping architecture and design (Architectural Control Committee) within the subdivision shall consist of not less than three nor more than five members.

"(b) The subdivider may appoint all of the original members of the Architectural Control Committee and all replacements until the first anniversary of the issuance of the original public report for the first (or only) phase of the subdivision. The subdivider may reserve to himself the power to appoint a majority of the members of the Committee until 90% of all the subdivision interests in the overall development have been sold or until the fifth anniversary date of the original issuance of the final public report for the first (or only) phase of the subdivision, whichever first occurs.

"(c) After one year from the date of issuance of the original public report for the first (or only) phase of the subdivision, the governing body of the Association shall have the power to appoint one member to the Architectural Control Committee until 90% of all of the subdivision interests in the overall development have been sold or until the fifth anniversary date of the original issuance of the final public report for the first (or only) phase of the subdivision, whichever first occurs. Thereafter the governing body of the Association shall have the power to appoint all of the members of the Architectural Control Committee."

■ Although the language of Regulation 2792.28 does not specifically limit its application to common interest developments, such a limitation is clear when the regulation is considered in the context of the statutory and regulatory scheme as a whole. Regulation 2792.28 specifies the elements that the Commissioner will "ordinarily consider" as establishing that "reasonable arrangements" have been made for turning over control of the structural and landscaping architecture and design to the purchasers of interests in the subdivision as required under section 11018.5, subdivisions (d) and (e) for the issuance of a public report for a common interest development. As there is no similar condition to the commissioner's issuance of a public report relating to a standard subdivision, Regulation 2792.28 is, in accordance with the statutory scheme, inapplicable to such a subdivision. (See 9 Miller & Starr, Cal. Real Estate, *supra*, § 25:115, pp. 265–266 [discussing Regulation 2792.28 as applicable to common interest developments only].)

■ The Association nonetheless argues that we should "extend the protection set forth in . . . section 11018.5(d)" and Regulation 2792.28 to standard subdivisions for policy reasons. However, as the Association points out, the Commissioner is authorized to carry out the legislative policies underlying the Act by adopting such rules or regulations it deems reasonably necessary for that purpose. (§ 11001.) Because the Commissioner has been charged with administering and enforcing the Act, we must defer to its decision as to what rules and regulations are necessary to accomplish the legislative purpose underlying the Act (see *Sierra Club v. California Coastal Com.* (2005) 35 Cal.4th 839, 861 [28 Cal.Rptr.3d 316, 111 P.3d 294]; *Mendoza v. Town of*

*Ross* (2005) 128 Cal.App.4th 625, 632 [27 Cal.Rptr.3d 452]) and thus decline the Association's invitation to interpret the Commissioner's regulations to say something they do not.

The trial court correctly sustained the defendants' demurrer to the declaratory relief cause of action based on the inapplicability of Regulation 2792.28 to Greens Nos. 2 and 3.

### 3. *Sufficiency of the Allegations to Support Individual Liability*

The Association's second amended complaint named various individual members of the Architectural Committees as defendants. The individual members demurred to the claims against them, arguing that the Association had failed to allege facts establishing any individual liability. After the Association dismissed its claims against two of the individual members without prejudice, the court sustained the demurrer by the remaining individual members (the Cavanaughs) without leave to amend and entered a judgment of dismissal in their favor. The Association thereafter filed a notice of appeal from that judgment, but did not file an opening brief; as a result, this court dismissed the appeal and issued a remittitur.

In this appeal from the judgment entered in favor of the Developer and the Architectural Committees, the Association argues that the trial court erred in sustaining the Cavanaughs' demurrer to its second amended complaint without leave to amend for failure to state viable causes of action. The defendants have filed a motion to dismiss this part of the appeal on the ground that the Association is precluded from raising a challenge to the judgment of dismissal in favor of the individual committee members in this appeal. We agree.

As noted above, although the Association filed its original notice of appeal from the trial court's judgment of dismissal, it thereafter failed to file an opening brief, which resulted in the dismissal of that appeal. Because this court's dismissal of the first appeal did not expressly provide that it was without prejudice to a subsequent appeal, the trial court's judgment of dismissal became final and binding and the Association cannot now take another appeal from that judgment. (Code Civ. Proc., § 913; *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1017–1018 [48 Cal.Rptr.2d 174]; *Linn v. Weinraub* (1948) 85 Cal.App.2d 109, 110 [193 P.2d 21]; *Smith v. Superior Court* (1937) 21 Cal.App.2d 160, 164 [69 P.2d 176].) Accordingly, we grant the motion to dismiss the portion of the Association's appeal arising out of the judgment of dismissal in favor of the individual members of the Architectural Committees.

## DISPOSITION

The motion to dismiss the portion of this appeal challenging the December 2003 judgment of dismissal in favor of the individual members of the Architectural Committees is granted. The June 2004 judgment is reversed as to the Association's claims for declaratory relief, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, breach of agreement, quiet title, accounting and injunctive relief as alleged in its third amended complaint against the Developer and the Architectural Committees. In all other respects, the June 2004 judgment is affirmed. The Association is entitled to recover costs of appeal against the Developer and the Architectural Committees; the individual members of the Architectural Committees are entitled to recover their costs of appeal against the Association. The matter is remanded for further proceedings consistent with this opinion.

Nares, Acting P. J., and O'Rourke, J., concurred.

A petition for a rehearing was denied October 3, 2005, and the opinion was modified to read as printed above.