Filed 12/8/15  Thomson v. Bacchus CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MISTY THOMSON,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HAROUN BACCHUS,<br><br>Defendant and Appellant. | B260921<br><br>(Los Angeles County<br>Super. Ct. No. SS022421) |

APPEAL from an order of the Superior Court of Los Angeles County, Norman P. Tarle, Judge.  Affirmed.

Haroun Bacchus, in pro. per., for Defendant and Appellant.

Misty Thomson, in pro. per., for Plaintiff and Respondent.

———————————

Defendant Haroun Bacchus, in propria persona, appeals a December 15, 2014 civil restraining order obtained by his roommate, plaintiff Misty Thomson. Because we find the trial court did not abuse its discretion in issuing the restraining order, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### I.

### The Parties

Bacchus leased and resided in a two-bedroom apartment in the City of Santa Monica beginning in 1993. In 2004, Bacchus accepted Thomson as a co-equal tenant and she became a signatory on the lease. Tensions between Bacchus and Thomson apparently arose early in their co-tenancy and escalated after 2009, when Thomson's husband, Alex Yerkes, moved into the apartment. (*Thomson I*, *supra*, p. 2.)

### II.

### January 2011 Restraining Order

On January 13, 2011, Thomson obtained a temporary restraining order against Bacchus to remain in effect until the hearing on Thomson's request for a civil harassment restraining order. On February 2, 2011, the court issued a one-year restraining order enjoining Bacchus from harassing, attacking, striking, threatening, abusing, or hitting Thomson, keeping her under surveillance, or blocking her movements. On May 31, 2011, Yerkes appeared ex parte on Thomson's behalf to request amendment of the restraining order to include a stay-away order. The request was granted. As amended, the restraining order provided that Bacchus was required to stay at least 100 yards away from Thomson and Yerkes and their homes and vehicles. (*Thomson I*, *supra*, at pp. 2-3.)

---

[1]    Our discussion of the parties and prior proceedings is drawn from the appellate court dispositions in Bacchus's three prior appeals: *Thomson v. Bacchus* (Feb. 27, 2013, B234047) [nonpub. opn.] (*Thomson I*); *Thomson v. Bacchus* (July 7, 2014, B244144) [nonpub. opn.] (*Thomson II*); and *Thomson v. Bacchus* (June 2, 2015, order dismissing appeal as moot, B251514) [nonpub. order] (*Thomson III*). These appellate decisions are citable in the present opinion pursuant to California Rules of Court, rule 8.1115(b)(1).

Bacchus appealed the May 31, 2011 order. The Court of Appeal reversed, concluding, among other things, that Bacchus had not been given proper notice of the proceedings. (*Thomson I*, *supra*, at pp. 4-5.)

## III.

## July 2012 Restraining Order

On July 2, 2012, Thomson filed a second request for a civil harassment restraining order against Bacchus. In support, Thomson alleged: She and her husband shared a Santa Monica apartment with Bacchus. In May 2011, Thomson obtained a 100-yard restraining order against Bacchus. The order expired " 'a couple of months ago and [Bacchus] no longer lives with us but he continues to pay rent and is still on the lease. He stops in for a few minutes once a week and is hostile every time.' " Thomson said she was fearful for her safety because Bacchus acted aggressively and physically obstructed her with his body.

On July 2, 2012, the trial court issued a temporary restraining order, to remain in effect until the court hearing, scheduled for July 24, 2012.

Bacchus filed a written response, denying he had been hostile and asserting he had given Thomson and her husband a lot of space by staying with relatives. Bacchus also indicated that the shared apartment was rent-controlled, he had lived there a long time, and it was his only residence.

On July 24, 2012, the matter came on for hearing. The trial court issued a one-year restraining order directing Bacchus to stay at least 20 feet away from the apartment, from Thomson, and from her husband. The order was set to expire at midnight on July 24, 2013.

On August 23, 2012, Bacchus filed a motion to dissolve the July 24, 2012 restraining order, on the ground that Thomson's testimony was not credible. On September 25, 2012, the motion to dissolve the restraining order was denied.

3

Bacchus appealed from the order denying the motion to dissolve the restraining order. In a July 7, 2014 opinion, we concluded that Bacchus's appeal was moot because the restraining order from which Bacchus appealed had expired on July 24, 2013. (*Thomson II*, *supra*, at pp. 2-5.)

## IV.

## August 2013 Renewal Order

On August 7, 2013, at Thomson's request, the trial court issued an order renewing the civil harassment restraining order against Bacchus for one year. Bacchus appealed, and on June 2, 2015, we dismissed the appeal as moot because the renewal order had expired on August 7, 2014. (*Thomson III*, *supra*, pp. 1-3.)

## V.

## December 2014 Renewal Order

On August 4, 2014, shortly before the August 2013 renewal expired, Thomson requested a second renewal of the 2012 restraining order. In support of her request, Thomson stated: "Mr. Bacchus has a document[ed] history of assault. The [restraining order] has kept us feeling safe for the last three years. . . . In the time the orders have been in place, he continues to harass us in any way he can – namely, suing my husband and myself several separate times for financial damages related to his arrest for assault. Each time the court has thrown his cases out. This is a waste of our time and resources. He continues to waste our resources unapologetically but at least he can't harm us physically. That is a huge relief as we used to live in fear of his scary, violent, unpredictable and very intimidating behavior. [¶] I ask the court to continue to protect us from this unpredictable, violent individual."

4

Bacchus opposed the request for renewal, asserting that he had not harassed Thomson. He urged: "[T]he restraining order in effect must not be renewed because it was false since its inception on either July 01, **2012**, or July 01, **2011**, whichever date Ms. Thomson decided to use for the fabricated incident. All of her material misstatements, contradictions, and inconsistencies mean she is not credible, and that the July 24, 2012 ORDER WAS WRONGFULLY GRANTED BECAUSE OF A FALSE ACCUSATION. NO EVIDENCE SUPPORTS HER ACCUSATION, AND THE CLEAR AND CONVINCING EVIDENCE WAS NOT MET. Affirmative action must be taken to stop these false accusations."

Both parties appeared at a hearing on December 15, 2014. The court asked Thomson what had happened since the original order to trigger the need for a continued order. Thomson said nothing had happened because Bacchus had "kept his distance." She testified, however, that after the original restraining order had lapsed, Bacchus had returned to their shared apartment late at night when she was home alone, and while she and Bacchus were in the hall together he pushed her against the wall.

Bacchus said the alleged pushing incident was fabricated. He said he had not seen Thomson on the evening he allegedly pushed her, and on other occasions when he returned to the apartment he "never made eye contact with Ms. Thomson or her spouse" and "totally and completely avoided them."

Thomson then testified as follows: "He always has an issue with the common space. For years and years and years, if I was in the living room or the kitchen, he would open his bedroom door and yell, 'Get out.' There was a period where it was 3:00 in the morning. I was laying in bed. This was before I was married. I was alone, and he was banging on my bedroom door screaming, 'F you. Get out.' I had to put [my] furniture up against the door because I was afraid. . . . But it was always if I was in a common area, and I think that a lot of his aggression on that particular night was because he had expected to come in and not see anybody, and you know, he's very passive aggressive, a lot of body blocking, a lot of physical standing in front of me, a lot of intimidation,

5

physical intimidation.  And I think that was kind of a way for him to act out towards me because he was used to always coming and not ever running into anybody."

Bacchus then had the following exchange with the court:

"Mr. Bacchus:  All of this information about being in the apartment and causing a disturbance.  That was not me, Your Honor.  Whenever I was provoked, I responded accordingly . . . .

"The Court:  Why respond at all?  Why not just turn around and stop any escalations?  I mean, why not just back off?

"Mr. Bacchus:  But if I were to back off every single time from her and her spouse, that is not a proper defense.

"The Court:  Why not?

"Mr. Bacchus:  Because it would just keep on recurring.

"The Court:  Yeah.  Don't you think it will get worse if the confrontation escalates?

"Mr. Bacchus:  Are you saying that I should just be passive and let them walk all over me?  Because when they insult me in the kitchen and use my name in a defamatory manner, I have a right to respond to that."

In his closing remarks, Bacchus said:  "I never harassed anyone.  Whenever I – as I said, whenever I was provoked, I just responded accordingly.  I try to keep my temper down.  I was never violent to anyone.  I have never inflicted violence on any member of her family."

At the conclusion of the hearing, the court renewed the restraining order for one year (through December 14, 2015), but clarified that Bacchus was permitted to live in the shared apartment.  Bacchus was ordered not to "harass, intimidate, molest, attack, strike, stalk, threaten, assault, hit, abuse, destroy personal property of, or disturb the peace of" Thomson or her husband, and he was further ordered to stay at least one yard away from Thomson, Yerkes, Thomson's workplace, and Thomson's vehicle.

Bacchus timely appealed from the December 15, 2014 restraining order.

## CONTENTIONS

Bacchus contends (1) the 2012 restraining order was granted in error because Thomson did not present clear and convincing evidence of harassment; (2) Thomson's evidence in the present case was an attempt to relitigate an earlier case; (3) Thomson's testimony in the instant case was not credible because she gave inconsistent accounts of the same events; and (4) the trial court in the instant case refused to hear relevant evidence.[2]

## DISCUSSION

### I.

### Statutory Scheme

Code of Civil Procedure[3] section 527.6, subdivision (a)(1), provides that a victim of harassment "may seek a temporary restraining order and an injunction prohibiting harassment as provided in this section." Subdivision (b)(3) defines "harassment" to include actual violence and threats of violence, as well as "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person" and serves no legitimate purpose. To constitute harassment, the course of conduct "must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)

At the hearing on the petition for injunction, the trial court "shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting the harassment." (§ 527.6, subd. (i).)

---

[2] We deem Thomson's September 15, 2015 letter to be her respondent's brief on appeal.

[3] All subsequent statutory references are to the Code of Civil Procedure.

7

In the discretion of the court, an order issued after notice and hearing under this section may have a duration of not more than five years. (§ 527.6, subd. (j)(1).) The order may be renewed, upon the request of a party, for a duration of not more than five additional years, without a showing of any further harassment since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. A request for renewal may be brought at any time within the three months before the expiration of the order. (*Ibid.*)

On appeal, we consider "whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137-1138 [injunctions under section 527.6 are reviewed to determine whether factual findings are supported by substantial evidence; trial court's determination of controverted facts will not be disturbed on appeal].)" (*R.D. v. P.M*. (2011) 202 Cal.App.4th 181, 188.)

## II.

### The Trial Court Did Not Abuse Its Discretion in
### Granting the December 2014 Renewal Order

*A.      Sufficiency of the Evidence to Support the Underlying Order*

Bacchus's initial contention is that the underlying restraining order, issued in July 2012, was issued in error. He urges: "Judge Hahn arbitrarily granted personal conduct and stay-away orders against me, even though I defended myself against Ms. Thomson's false allegation of harassment, specifically a push, with proper evidence . . . . The evidence [Thomson] provided to the court back in 2012 did not meet the high burden threshold of clear and convincing evidence, as her pleadings contained other contradictions, material misstatements, and inconsistencies."

The July 2012 restraining order was the subject of the appeal dismissed by this court on July 7, 2014. The dismissal of that appeal made the trial court's July 2012 order final and binding and therefore not subject to further inquiry. (*Property Owners of Whispering Palms, Inc. v. Newport Pacific, Inc.* (2005) 132 Cal.App.4th 666, 677; *Estate of Basso* (1947) 79 Cal.App.2d 758, 761.)

B.      *The Trial Court Properly Relied on Evidence of 2012 Conduct, and This Court Is Bound by the Trial Court's Credibility Findings with Regard to Testimony About Such Conduct*

Bacchus next contends that the trial court erred in relying on an alleged 2012 incident, about which the court heard testimony in 2012 and again in 2013, to support its present renewal order. We do not agree that the trial court's reliance on this incident was improper: "While it is true that an injunction restraining future conduct is authorized by section 527.6 only when it appears from the evidence that the harassment is likely to recur in the future [citation], in evaluating the likelihood that the harassment will continue *the court was not limited to events that occurred after the first restraining order was entered*. The lapse of the first harassment restraining order did not erase the facts on which the order was based, and did not preclude the court from considering the existence of those facts in evaluating the need for a new order." (*R.D. v. P.M.*, *supra*, 202 Cal.App.4th at pp. 189-190, italics added.)

Bacchus also contends that the trial court erred in giving credence to Thomson's testimony concerning the 2012 pushing incident because that testimony differed from Thomson's prior account of the same incident. Under well-accepted rules of appellate review, however, we do not reweigh the trial court's credibility determinations. Instead, we must " ' " 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and *are bound by the trial court's credibility determinations*. [Citations.]" ' " (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1102, italics added; see also *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762 ["We resolve all

9

factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value. [Citations.]"].)  Accordingly, we cannot reweigh the trial court's conclusion that Thomson was credible.

### C.    Alleged Exclusion of Relevant Evidence

Lastly, Bacchus contends that the trial court abused its discretion in precluding him from introducing evidence he believed relevant to the renewal order—namely, that he was not properly served with Thomson's application for the *first* renewal order (in August 2013) because the application did not attach a Judicial Council form for him to use for his response.  Bacchus urges:  "*Without a proper service of process*, the opposition's initial action will not have legally commenced.  Subsequently, all other actions commissioned under [Commissioner] St. George would have been null and void." (Emphasis added.)

There is no dispute that Bacchus had actual knowledge of the application for the first renewal order and, indeed, filed opposition prior to the hearing.  Because a general appearance can make up for a complete failure to serve summons (*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145), Bacchus's contention that a failure to attach a Judicial Council response form somehow invalidated service has no merit.

10

**DISPOSITION**

The December 15, 2014 civil harassment restraining order is affirmed. Respondent is awarded her appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:


ALDRICH, J.


LAVIN, J.

11