Filed 9/19/24  In re T.D. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re T.D., a Person Coming Under the Juvenile Court Law. | B332467 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP05827A) |
| Plaintiff, | |
| v. | |
| H.P. et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Stephen C. Marpet, Commissioner.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant H.P.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant Jocelyn D.

Marsha F. Levine, under appointment by the Court of Appeal, for Respondent T.D.

_____

Two men came forward and claimed to be the father of a dependent child, respondent T.D. (born 2018). At the outset of the dependency case, the juvenile court granted presumed father status to appellant H.P. at an uncontested hearing. Subsequently, Josue C. (Josue), T.D.'s biological father, appeared and successfully moved for presumed father status.

Later, T.D.'s appointed counsel filed a Welfare and Institutions Code, section 388[1] petition requesting the court vacate its order giving H.P. presumed father status. H.P. filed his own section 388 petition requesting custody of T.D., or in the alternative, an order granting him unmonitored visits. T.D.'s petition was granted; H.P.'s petition was denied. The court terminated jurisdiction, and its final exit order and judgment granted H.P. monitored visits and no share of legal or physical custody. H.P. appeals from the orders granting T.D.'s section 388 petition and denying his, as well as the exit order. We affirm.

---

[1] Unless otherwise specified, statutory references in this opinion are to the Welfare and Institutions Code.

2

# BACKGROUND

## A.     Referral, Detention, Adjudication, and Disposition

T.D. came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in late 2021, when it was reported her mother, Jocelyn, had been violent with family members in T.D.'s presence and smashed the windshield of an aunt's car.  Family members reported Jocelyn drank alcohol daily and excessively.  Jocelyn did not appear for drug testing arranged by DCFS and eventually refused to test.

In December 2021, DCFS filed a petition under section 300 alleging T.D. was at risk of serious physical harm from Jocelyn's violent behavior, her failure to protect, supervise, and care for T.D., and her history of substance abuse and current alcohol abuse.  The petition alleged H.P. knew or should have known of Jocelyn's substance abuse but failed to protect T.D.  Four days after the petition was filed, H.P. filed a Statement Regarding Parentage indicating he was T.D.'s father and describing his history with the child and Jocelyn.  Jocelyn filed a Parentage Questionnaire that identified H.P. as T.D.'s father and supplied additional facts about H.P.'s role in T.D.'s life, for example, that he signed T.D.'s birth certificate.  At that time, no other man claimed to be T.D.'s father.

On December 28, 2021, the juvenile court ordered T.D. detained.  Jocelyn was allowed two-hour, monitored visits twice weekly.  H.P. was granted presumed father status, and in January 2022, T.D. went to live with him.

Before a combined jurisdiction and disposition hearing in March 2022, DCFS reported that H.P. allowed Jocelyn to spend unmonitored time with T.D.  The court sustained the section 300 petition and declared T.D. a dependent.  It also ordered

3

monitoring for Jocelyn's visits. Though T.D. was allowed to remain in H.P.'s custody, the court specifically forbade H.P. from leaving T.D. alone with Jocelyn.

**B.     T.D.'s Removal from H.P.**

In March 2022, Jocelyn entered a drug and alcohol treatment program and tested positive for methamphetamine and alcohol on arrival. By early May, the program discharged her for bringing alcohol into the facility, and it reported her treatment was "unsuccessful." By early June, DCFS received reports from Jocelyn's mother, her therapist, and Jocelyn herself that H.P. again had left T.D. at Jocelyn's home, unmonitored, on multiple occasions during the previous month. In mid-June 2022, DCFS filed a supplemental petition under section 387[2] and an application to authorize T.D.'s removal from H.P.

**C.     Josue Is Granted Presumed Father Status**

At a June 2022 detention hearing on the supplemental petition, the juvenile court found a prima facie case was alleged, and T.D. was ordered removed from H.P. Josue attended the hearing. Earlier the same day, he filed his own Statement Regarding Parentage alleging he was T.D.'s biological father based on a 2019 paternity test and other facts concerning his relationship with Jocelyn and T.D. The court ordered DNA testing.

---

[2]     "Supplemental petitions are authorized under section 387." (*In re Paul E.* (1995) 39 Cal.App.4th 996, 1000, fn. 2.) "Briefly, the statute provides that any 'order changing or modifying a previous order by removing a minor from the physical custody of a parent . . . shall be made *only* after noticed hearing upon a supplemental petition.'" (*Ibid.*)

4

The test results indicated T.D. was indeed Josue's biological daughter, and in September 2022, Josue filed a motion for presumed father status. Josue explained his absence from T.D.'s early life was because Jocelyn told him that H.P. was the child's father. In 2019, however, Jocelyn told Josue he might be T.D.'s father after all. A paternity test indicated T.D. was Josue's biological daughter, and he began building a relationship with the child, providing clothes, food, and other necessities, and having Jocelyn and T.D. stay in his home one to two weeks a month. In the fall of 2021, however, Jocelyn prevented him from contacting the child, and he did not hear from her again until the spring of 2022, when she disclosed the open DCFS case. H.P. filed no opposition to Josue's motion. Neither man argued T.D. should have only one presumed father.

On October 11, 2022, the juvenile court granted Josue's motion. The court also sustained DCFS's supplemental petition and ordered T.D. removed from H.P. The following month, T.D. was placed with Josue, where she has remained for nearly two years.

## D.    H.P.'s First Appeal

In November 2022, H.P. filed a notice of appeal from the orders of October 11, 2022, among others. His appellate counsel later filed a brief pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835 (*Phoenix H.*)[3] in which he advised us he (1) found no arguable

---

[3]    An "appointed counsel for a parent in an appeal from an order of the juvenile court affecting parental rights who finds no arguable issues . . . should (1) inform the court he or she has found no arguable issues to be pursued on appeal, (2) file a brief setting out the applicable

issues to be pursued on appeal; and (2) had notified H.P. that, unless H.P. filed a personal brief establishing good cause to believe an arguable issue existed, the appeal would be dismissed. (B325344, July 24, 2023.)  H.P. did not file a brief, and we dismissed the appeal as abandoned.  (B325344, Sept. 26, 2023.)

### E.    The Section 388 Petitions

In May 2023, T.D. filed a petition pursuant to section 388. T.D. asked the court to vacate the order granting H.P. presumed father status, alleging circumstances had changed in that Josue was caring for her and had formed a bond with her.  Removing H.P.'s presumed father status was better for T.D., she contended, because Jocelyn and H.P. were no longer together and "having three parents in three separate households [was] not ideal" for T.D.  Furthermore, the parents did not get along with one another, and their conflicts played out in front of T.D., causing her distress.  DCFS supported T.D.'s petition.

H.P. filed a written opposition, as well as his own section 388 petition requesting the court vacate the order placing T.D. with Josue and either return T.D. to H.P. or allow him unmonitored visits.

At the August 2022 hearing, the juvenile court explained its reasons for granting T.D.'s petition.  H.P. and Jocelyn falsely represented to the court that H.P. was T.D.'s father.  After T.D. went to live with H.P., he violated the visitation orders by allowing Jocelyn unsupervised access to T.D., necessitating DCFS's filing of a section 387 supplemental petition.  T.D. was placed with Josue, and as a result, had spent time in the care of

facts and the law, and (3) provide a copy of the brief to the parent." (*Phoenix H., supra,* 47 Cal.4th at p. 843.)

6

both presumed fathers.  The court concluded, "Being a presumed father by way of [section] 7611 is a rebuttable presumption, and I think the actions that occurred since [Josue] has had this child in his care and custody are sufficient to show that it is in this minor's best interest to grant the 388, make [H.P.] an alleged father, and to have his visits to be monitored by a monitor approved of by [Josue] and/or a paid monitor paid for by [H.P]."[4]

## F.    Termination of Jurisdiction and Exit Orders

In September 2023, the juvenile court terminated jurisdiction and issued an exit order granting sole legal and physical custody to Josue.  H.P., described as "Former Presumed Father," was awarded two-hour, once-a-month visits.  Subsequently, the court issued an amended judgment that granted joint legal custody to Jocelyn and Josue.  H.P.'s visitation was unchanged.

H.P. appeals from the August and September 2023 orders.[5] He contends the juvenile court erred in granting T.D.'s section 388 petition and removing his presumed father status, and in granting him only monitored visits and no share of T.D.'s custody.

---

[4]    The juvenile court denied H.P.'s petition without a hearing, and H.P. does not contend this was erroneous.  H.P. also does not contend there was a lack of evidence to rebut his presumed parent status under Family Code, section 7611, subdivision (a).  We note the juvenile court found clear and convincing evidence that H.P. violated visitation orders by allowing Jocelyn unsupervised access to T.D. when it granted the section 387 supplemental petition.

[5]    Jocelyn also filed a notice of appeal.  DCFS appeared as a respondent and moved to dismiss her appeal as moot.  (BC325344, Mar. 29, 2024.)  The motion was granted.  (BC325344, May 6, 2024.)

## DISCUSSION

### A. Governing Law

#### 1. *Section 388 Petitions*

A juvenile court dependency order may be changed, modified, or set aside at any time. (§ 385.) A parent or a dependent child, through a properly appointed guardian, may petition the court to set aside an order on the grounds of change of circumstance or new evidence. (§ 388, subd. (a)(1).) [6] "'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances and (2) that the proposed modification would be in the best interests of the child.' [Citation.]" (*In re J.M.* (2020) 50 Cal.App.5th 833, 845, italics omitted.)[7]

A section 388 petition "is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415–416.) A court abuses its

---

[6] T.D.'s counsel was appointed to represent her and "serve as the [C]hild [A]buse [P]revention and [T]reatment [A]ct G[uardian] A[d] L[item] or Guardian Ad Litem." (See 42 U.S.C. § 5101 et seq.; § 326.5 [CAPTA guardian ad litem "may be an attorney"]; Rules of Court, rule 5.662(c) [CAPTA guardian ad litem must be appointed for every child who is the subject of a dependency petition].) T.D.'s section 388 petition was filed by her attorney, who was also her guardian ad litem.

[7] H.P. does not contend a section 388 petition was an improper vehicle for challenging his father status. Courts have resolved presumed parenthood questions in section 388 proceedings. (See, e.g., *In re Eric E.* (2006) 137 Cal.App.4th 252, 258 ["A request for presumed father status after the expiration of the reunification period is made by filing a section 388 petition"]; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 955.)

discretion if its determination is arbitrary, capricious, or patently absurd. (*In re A.F.* (2024) 102 Cal.App.5th 778, 786.)

        2.    *Presumed Fatherhood in Dependency Proceedings*

H.P. contends the juvenile court erred in changing his status from presumed father to alleged father. "'In dependency proceedings, "fathers" are divided into four categories—natural [or biological], presumed, alleged, and de facto.' [Citation.]" (*In re J.O.* (2009) 178 Cal.App.4th 139, 146 (*J.O.*), abrogated on other grounds, *In re R.T.* (2017) 3 Cal.5th 622.) "A biological father is one whose paternity is established, but who does not qualify as a presumed father." (*Ibid.*) An alleged father may be the father but has not "established himself as either a biological father or a presumed father." (*Id.* at pp. 146–147.) "The distinction is important because only a presumed father is entitled to custody or a reunification plan." (*Id.* at p. 147.)

As a person not married to T.D.'s mother, H.P. could attain presumed father status by signing a voluntary declaration of parentage under Family Code sections 7570, et seq. (See Fam. Code, § 7573, subd. (d) [a voluntary declaration of parentage "is equivalent to a judgment of parentage of the child and confers on the declarant all rights and duties of a parent"].) Alternatively, H.P. could attain presumed parent status through section 7611, subdivision (d), which requires, "'The presumed parent receives the child into his or her home and openly holds out the child as his or her natural child.'" (*In re Alexander P.* (2016) 4 Cal.App.5th 475, 485.) "To qualify under subdivision (d), a person must have a 'fully developed parental relationship' with the child." (*Ibid*). The presumed parent must demonstrate a full

commitment to his paternal responsibilities—emotional, financial, and otherwise. (*Ibid.*)

H.P. spends a significant portion of his opening brief arguing that the juvenile court was unclear about the basis for its order finding him to be a presumed father. He asserts he is a presumed father because he signed a voluntary declaration of parentage, though he concedes it does not appear in the record. He argues that, even if he did not sign the declaration of parentage, he meets the standard for being a presumed father under section 7611, subdivision (d). However, the basis upon which H.P. was found to be a presumed father is not challenged in this appeal. T.D. concedes that H.P. was properly made a presumed father.

Josue was also made a presumed father after successfully moving for that status. However, because H.P. did not substantively oppose Josue's motion in the juvenile court, he forfeited any challenge to the October 2022 order granting the motion. (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 582 (*Elijah V.*) ["A parent's failure to raise an issue in the juvenile court prevents him or her from presenting the issue to the appellate court"].) Moreover, the October 2022 order was dealt with in H.P.'s prior appeal: it was identified in the notice of appeal, his counsel represented the order presented no arguable issues, (B325344, July 24, 2023), and we dismissed the appeal.[8] (B325344, Sept. 26, 2023.). Our dismissal of the appeal became

---

[8] Code of Civil Procedure section 913 states: "The dismissal of an appeal shall be with prejudice to the right to file another appeal within the time permitted, unless the dismissal is expressly made without prejudice to another appeal." Our dismissal of the prior appeal did not expressly state it was without prejudice.

final.  (*Property Owners of Whispering Palms, Inc. v. Newport Pacific, Inc.* (2005) 132 Cal.App.4th 666, 677.)[9]  Accordingly, H.P. has forfeited the ability to challenge the order granting Josue presumed father status.  We therefore proceed under the assumption that both men initially met the statutory criteria for presumed fathers[10] and turn to T.D.'s petition under section 388.

## B.    T.D.'s Section 388 Petition

### 1.    *Contentions of Error and Forfeited Matters*

H.P. argues for reversal of the order granting T.D.'s section 388 petition.  He summarizes his argument as follows: "The [j]uvenile [c]ourt abused its discretion because there was no substantial evidence to support its finding and order and because

---

[9]    In the notice of appeal filed in this case, H.P. does not mention the order granting Josue's motion to be declared a presumed father.

[10]    Generally, there can be only one presumed father, even if two men meet the definition.  (*J.O., supra*, 178 Cal.App.4th at p. 147.)  When a juvenile court finds two men can each "claim a presumption of fatherhood," its undertaking is to consider policy and logic (§ 7612, subd. (b)) and determine whether the "scales favor[ ]" one of the men.  (*In re Jesusa V.* (2004) 32 Cal.4th 588, 607.)  In "limited contexts," Family Code, section 7612, subdivision (c) permits courts to recognize more than one presumed father, where "'recognizing only two parents would be detrimental to the child.'"  (*In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1087.)  When Josue was granted presumed father status, both H.P. and Josue had relationships with T.D.  She had lived with H.P. but was going to start living with Josue.  No one requested more-than-two-parents findings, and no express findings were made.  H.P. does not mention Family Code, section 7612, or argue there was a need for more-than-two parents findings in his opening brief.  (*Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982 [appellant forfeits an issue by failing to raise it in his opening brief].)

it failed to protect [T.D.'s] lifelong relationship with [H.P]." However, he does not articulate more specific contentions of error with clarity.

"'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.'" (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)  We may "exercise our discretion to consider arguments for which we can discern a legal or factual basis in the briefs," but "'[w]e are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise.' [Citation.]" (*Ibid.*)

Appellants, moreover, must "'[s]tate each point under a separate heading or subheading summarizing the point . . . .'" (*Petrovich Development Company, LLC v. City of Sacramento* (2020) 48 Cal.App.5th 963, 976, fn. 9, citing Cal. Rules of Court, rule 8.204(a)(1)(B).)  "'Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading.' [Citation.]" (*Ibid.*)  "The purpose of requiring headings and coherent arguments in appellate briefs is . . . [to require] 'litigants to present their cause systematically'" and clearly.  Others should not be "'compelled to extricate [appellant's contentions] from the mass.' [Citation.]" (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.)

H.P.'s brief, including its headings and subheadings, fails to identify his specific arguments.  We are left with a discussion of how H.P. and Josue attained presumed father status, supposed errors in those orders (which are not before us on appeal), and the factual events that followed.  For example, the subheadings

12

include "[T.D.] is placed with Josue," "[H.P.] and Josue do not get along," and "Josue and Jocelyn do not get along." In short, H.P.'s brief lacks useful headings, cogent argument, and legal authority to support each point.

That said, we can generally discern the facts and law on which two arguments are based: (1) substantial evidence did not support the juvenile court's finding a change of circumstances; and (2) the court failed to protect H.P.'s existing relationship with T.D. We review these two points and conclude all other assertions of error concerning the section 388 order are forfeited.

2. *Substantial Evidence Supported a Finding of Changed Circumstances*

H.P. was granted presumed father status early in the case at an uncontested hearing, when no other man claimed paternity. Subsequently, the juvenile court sustained the section 300 petition's allegation that H.P. knew of Jocelyn's substance abuse and failed to protect T.D. Allegations of Jocelyn's violence and alcohol abuse were also sustained, and the court allowed her only short, monitored visits. Nevertheless, after T.D. went to live with him, H.P. continued to fail to protect her, repeatedly leaving the child in Jocelyn's care unsupervised. He did so even when it was apparent Jocelyn's drug and alcohol use remained uncontrolled— for example, after she was involuntarily discharged from a treatment program for bringing alcohol into the facility. He disregarded instructions from the court and social worker to stop allowing Jocelyn to have unsupervised access to T.D.

DCFS filed a supplemental petition so T.D. could be removed from H.P., alleging he had "endanger[ed] [T.D.'s] physical health and safety and places the child at risk of serious

13

physical harm, damage and danger." The court agreed, finding "by clear and convincing evidence there is a substantial danger to the minor's physical and mental well-being." After T.D. went to live with Josue, H.P.'s visits were contentious, and Josue reported H.P. tried to fight him and threatened to kill him. Meanwhile, T.D.'s bond with Josue grew. Substantial evidence established a significant change of circumstances that warranted reevaluation of the earlier order, thereby satisfying the first prong of section 388.

H.P. contends substantial evidence did not support the juvenile court's finding he "came into court, sat as the father, swore under oath that he is the father, knowing full well he wasn't the father." On this point, we agree. H.P. did not testify at the December 28, 2021 hearing at which his presumed father status was determined. This erroneous finding, however, was harmless "in view of the strength of other evidence in the record" that supported granting the section 388 petition. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 591.) The incorrect finding H.P. made a misrepresentation to attain presumed father status was less significant than the undisputed evidence he had endangered T.D. while she was in his care.

H.P.'s other contentions invite us to reweigh the evidence, make credibility determinations, and reach a different result. H.P. questions Josue's and Jocelyn's credibility, and he argues the juvenile court "ignored" evidence of Josue's absences from T.D.'s life, Josue's criminal history, T.D.'s safety, H.P.'s commitment to T.D., his participation in reunification services, his acceptance of responsibility for violating court orders, and his lack of criminal history. He also argues the court should not have given weight to evidence of conflict between H.P. and Josue

14

during H.P.'s visits because the problems between them "had long been fixed" before the section 388 hearing. Issues of fact and credibility are the province of the juvenile court, and as a reviewing court, we do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.) Accordingly, none of H.P.'s other contentions establish reversible error.

      3.     *Protection of the Relationship with T.D.*

H.P. contends the juvenile court failed to focus on protecting his existing relationship with T.D. He asserts his social relationship with her was more important than a biological relationship. However, the cases he cites in support of his argument are inapplicable. *Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 239 (*Rodney F.*) and *In re Marriage of Freeman* (1996) 45 Cal.App.4th 1437, 1445 (*Freeman*) involved children conceived during marriage, and to the extent the cases suggest a duty to protect existing relationships, the cases were referring to the relationship between a child and a mother's husband, whose fatherhood was conclusively presumed under Family Code, section 7540.[11] (See *Rodney F., supra,* 61 Cal.App.4th at p. 239 [conclusive presumption favoring husband over biological father "reflects the sanctity traditionally accorded to the relationships that develop within the unitary family"]; *Freeman, supra,* 45 Cal.App.4th at pp. 144–1446 [where husband sought to avoid

---

[11] Family Code, section 7540, subdivision (a) provides: "Except as provided in Section 7541, the child of spouses who cohabited at the time of conception and birth is conclusively presumed to be a child of the marriage."

child support obligation of then-four-year-old child, social relationship was more important to paternity determination than biological relationship].)  As H.P. was not married to Jocelyn, the presumption that section 7540 confers expressly upon "spouses" does not apply to him.  Evidence that T.D. had a strong social relationship with him does not erase the substantial evidence supporting the court's finding that a significant change of circumstances had occurred.

H.P. does not expressly argue that modification of the presumed father order was not in T.D.'s best interest because she had a strong relationship with him.[12]  However, even if this argument is considered, substantial evidence supports a finding that T.D.'s best interest was served by modification of the order granting H.P. presumed father status.  H.P. demonstrated during the dependency he was unwilling or unable to protect T.D.  Moreover, the "toxic relationship" that had arisen between H.P. and Josue and their conflicts during visits caused a social worker to opine it was not in T.D.'s best interest for H.P. to be in contact with her.  DCFS reported that Josue was fulfilling T.D.'s needs, and she was comfortable living with him.

In summary, substantial evidence supported the juvenile court's determination that changed circumstances warranted changing H.P.'s presumed father status and the change was in T.D.'s best interest.  The court's order granting T.D.'s petition was not arbitrary, capricious, or patently absurd.

---

[12]     As we have discussed, section 388 requires evidence that (1) there is new evidence or a change of circumstances and (2)  the proposed modification would be in the best interests of the child.  H.P. only identifies the issue of changed circumstances, forfeiting any challenge to the best interest finding.

16

## C. Exit Order

H.P. contends the juvenile court abused its discretion by granting him monitored visits and by failing to allow him to share custody of T.D.  Section 362.4 authorizes the court to make "exit orders" regarding custody and visitation upon terminating dependency jurisdiction over a child.  (*In re J.M.* (2023) 89 Cal.App.5th 95, 112 (*J.M.*).)  In making exit orders, the juvenile court "'which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.' [Citation.]" (*Ibid.*)  The court has broad discretion in making such orders, which we review for an abuse of discretion.  (*Id*. at pp. 112–113.)

Only a presumed father is entitled to custody of a child.  (*J.O.*, *supra*, 178 Cal.App.4th at p. 146; Fam. Code, § 3010, subd. (a).)  Because the juvenile court did not err in vacating H.P.'s presumed father status, it did not abuse its discretion in denying him a share of custody.

H.P. contends the custody order should be reversed because the juvenile court intended to punish him, rather than serve T.D.'s best interests.  We disagree.  In the opinion he cites, *In re N.M.* (2023) 88 Cal.App.5th 1090, the juvenile court abused its discretion by awarding custody to mother because she participated in the case plan and father did not.  (*Id*. at p. 1095.)  In this case, the custody order naturally flowed from the change in H.P.'s presumed father status, which the court determined to be in T.D.'s best interests.  H.P. points to nothing in the record to suggest punitive motives, and we decline to impute such motives to the juvenile court.

17

As for visitation, H.P. does not show us that he made an objection to the visitation order in the juvenile court. Accordingly, he has forfeited his challenge. (*Elijah V.*, *supra*, 127 Cal.App.4th at p. 582.) Moreover, H.P. concedes an alleged father is not entitled to visitation.[13] He also does not show that requiring a monitor was an abuse of discretion, given H.P.'s past conduct and the discord between him and Josue.

## DISPOSITION

The juvenile court's orders are affirmed.

MORI, J.

We concur:

CURREY, P. J.

ZUKIN, J.

---

[13] In his opening brief, H.P. states, "*In re A.H.* (2022) 84 Cal App.5th 340 provides an excellent summary of the differences between presumed, biological and alleged fathers," and he provides this quote from the opinion: "'Alleged fathers have "fewer rights" and, unlike presumed fathers, "are not entitled to . . . visitation[.]"' [(*Id.* at p. 349.)]"