[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 254 
OPINION
In this dependency proceeding, both the husband of Eric's mother and Eric's biological father sought presumed father status. A presumed father has greater rights than an alleged or biological father. We affirm an order awarding the husband presumed father status because the biological father did not seek that status until after a Welfare and Institutions Code section 366.26[1] hearing had been set and, at that time, he could not show a modification of his status was in Eric's best interest.
 FACTUAL AND PROCEDURAL BACKGROUND
Eric and his half brother, Michael, were removed from Julie B.'s (Mother) custody and detained in September 2002. A section 300 petition, as later sustained, alleged that Mother has a history of substance abuse rendering her unable to provide adequate care for the children. It was alleged that Mother suffers from mental and emotional problems requiring hospitalization in a psychiatric treatment center and rendering her incapable of providing regular care for her children. It also was alleged that Robert, Mother's husband, had a history of substance abuse that may affect his ability to provide care.[2]
On September 11, 2002, at the detention hearing, Robert requested that the court find him to be Eric's presumed father, but the court refused to then consider the request.[3] The next day Robert again requested to be found Eric's presumed father, and the juvenile court again refused to consider that request. The court found Robert to be Eric's alleged father.
On November 19, 2002, Gene, Eric's biological father, who was incarcerated, appeared in court for the first time. Gene was ordered to undergo a drug rehabilitation program with random testing. The court further found "although he's an alleged father, [Gene] is offered reunification services. . . ."
Gene's Efforts to Reunify
A Los Angeles County Department of Children and Family Services (DCFS) report dated December 20, 2002, indicated that Gene reported it may take him *Page 256 
two to four years to reunite with Eric. On the same date, DCFS filed a petition alleging that Gene "is a current user of marijuana and methamphetamine, which renders the father unable to provide regular care for the child Eric. Further, the father's drug abuse endangers the child's physical and emotional health and safety and places the child at risk of serious physical and emotional harm and damage and creates a detrimental home environment." The petition eventually was sustained.
In June 2003, DCFS reported that Gene tested positive for methamphetamine and had not contacted DCFS to visit with Eric. Gene did not comply with the case plan and did not appear at a hearing where the issue was the termination of his reunification services. Gene's attorney indicated that Gene's whereabouts were unknown. Gene failed to keep DCFS updated with his address as he had been ordered. On August 13, 2003, Gene's reunification services were terminated. His whereabouts were still unknown.
Gene appeared on December 11, 2003, and opposed a recommendation to terminate his parental rights. Gene requested monitored visits with Eric, and the juvenile court permitted such visits. On February 4, 2004, at the section 366.26 hearing, Gene requested a hearing to determine whether he rose to the level of a presumed father.
Robert's Efforts to Reunify
Robert appeared at all of the hearings and complied with his case plan. On February 13, 2003, after he provided several negative drug tests, Robert was given custody of both Michael and Eric. Throughout these proceedings, DCFS consistently and uniformly reported that Robert provided a loving and stable home for Michael and Eric and that Eric had bonded with both Robert and Michael.
Competing Motions to Be Declared Eric's Presumed Father
Gene and Robert filed simultaneous motions to be declared Eric's presumed father.[4] Gene attached evidence indicating that Eric was born in Nevada, Gene's name is on Eric's birth certificate, and Gene signed a voluntary declaration of paternity, which he caused to be filed with the appropriate Nevada authority. The court denied Gene's motion and granted Robert's. *Page 257 
The court found that "under [section] 7612(b) of the Family Code, you have two presumptions that arise under [section] 7611 of the Family Law Code, that it's a weighing process that must take place. "Robert" has been acting as the father and has done so in an appropriate way. . . . [T]here is a sibling . . . [a]nd now those two kids are obviously extremely bonded to one another and are extremely bonded to" Robert. "[I]t's [Robert] who has been acting as the father, has conducted himself as the father, is looked at by the children as the father. And I'm sorry to say that's not the case with [Gene]. And I don't think it's that difficult of a call, really."
Gene appealed the order to this court. We requested supplemental briefing regarding whether Gene's motion was pursuant to section 388. We granted rehearing to further consider Gene's argument regarding whether his request for presumed father status should be deemed a section 388 petition and whether he has standing to contest the determination that Robert is Eric's presumed father.
 DISCUSSION
Gene contends the juvenile court was required to find him to be Eric's presumed father because he signed a voluntary declaration of paternity, which has the force of a judgment of paternity. As explained post, we disagree.
I. Gene's Motion for Presumed Father Status Must Be Deemed a Section 388 Petition
Section 316.2 requires the juvenile court to inquire of the mother the identity of all alleged or presumed fathers at the detention hearing or as soon thereafter as practicable. (§ 316.2, subd. (a); see also Cal. Rules of Court, rule 1413 [describing procedure for determining paternity].) Each alleged father is entitled to notice that the child is the subject of dependency proceedings. (§ 316.2, subd. (b).) Section 316.2 is designed to protect the alleged father's limited due process rights. (In re Paul H.
(2003) 111 Cal.App.4th 753, 760 [5 Cal.Rptr.3d 1].) An alleged father is entitled to notice so that he can challenge his paternity status. (In re Alyssa F. (2003)112 Cal.App.4th 846, 855 [6 Cal.Rptr.3d 1].) *Page 258 
There is no dispute that Gene was given notice of the proceedings and he appeared after the detention hearing but during the reunification period. On December 20, 2002, the court found that "although he's an alleged father, [Gene] is offered reunification services and the court will agree to that."[5]
No claim can be made that Gene lacked notice of the proceedings, the opportunity to change his paternity status, or the opportunity to reunify with Eric. Thus, Gene's failure to participate in his case plan was not the result of the juvenile court's failure to identify him as a possible father.
The primary purpose of achieving presumed father status in the dependency context is for the presumed father to have the right to reunification services and to custody. (Inre Jerry P. (2002) 95 Cal.App.4th 793, 804
[116 Cal.Rptr.2d 123].) There is no dispute that the juvenile court appropriately terminated Gene's reunification services because Gene failed to comply with his reunification plan. Gene did not seek custody of Eric and acknowledged that he was not prepared to assume custody of Eric for several years.
A request for presumed father status after the expiration of the reunification period is made by filing a section 388 petition. (In re Zacharia D. (1993) 6 Cal.4th 435, 442 fn. 5 [24 Cal.Rptr.2d 751, 862 P.2d 751] (Zacharia D.)[rejecting characterization that attempt to establish paternity was part of 18-month review hearing where father had not participated in dependency proceedings until that time].) "While a biological father is not entitled to custody under section 361.2, or reunification services under section 361.5 if he does not attain presumed father status prior to the termination of any reunification period, he may move under section 388 for a hearing to reconsider the juvenile court's earlier rulings based on new evidence or changed circumstances." (Id. at p. 454, fn. omitted.) Thus, Gene's motion made after the reunification period had appropriately terminated was in essence a section 388 petition, even though he did not identify it as such.
Contrary to Gene's argument, In re Jesusa V. (2004)32 Cal.4th 588, 595 [10 Cal.Rptr.3d 205, 85 P.3d 2] (JesusaV.) does not hold otherwise. In that case, the court considered a biological father's request to be declared a presumed father made nine days after the detention hearing. (Id. at p. 596.) Thus, Jesusa V. simply does not bear on the issue of a dilatory request for presumed father status made after a section 366.26 hearing had been set. *Page 259 
This case is distinguishable from the authority Gene cites because Gene waited until after the section 366.26 hearing had been set to request presumed father status. While Gene correctly points out the best interest of the child standard cannot be applied to deny a father reunification services (In re JuliaU. (1998) 64 Cal.App.4th 532, 538-539 [74 Cal.Rptr.2d 920] (Julia U.)), here Gene received reunification services and did not contest their termination. We do not hold that the trial court generally should apply a best interest standard in determining presumed father status. However, in this case, where Gene waited until after his reunification services had terminated and after a section 366.26 hearing had been set, his request for presumed father status must be brought as a section 388 petition. In the context of the dependency proceeding, Gene had not established that he was a presumed father and therefore, at the time of the section 366.26 hearing, he was a biological father or an alleged father. (Zacharia D., supra,6 Cal.4th at p. 449, fn. 15.)
This case is not analogous to Julia U., supra,64 Cal.App.4th 532, as Gene argues. In Julia U., the appellate court reversed an order terminating reunification services for a father and terminating his parental rights. (Id. at p. 544.) In that case, "[t]he trial court . . . set a section 366.26 hearing on the same day appellant first appeared in court and paternity testing was ordered. One week later, the court terminated all reunification services in the case, including any for appellant. The court did not wait to determine if the testing revealed appellant was Julia's biological father. Nor did the court give appellant the same opportunity to counsel as the court gave Jose U., an alleged father. . . . Nor did the court give appellant any opportunity to establish his right to paternity." (Id. at p. 543.)
In contrast to the father in Julia U., Gene was provided counsel and was provided reunification services. The section 366.26 hearing was not set until after Gene's reunification services were terminated. The termination of reunification services was the result of Gene's failure to comply with the case plan. The law applicable to a father who was denied reunification services and any opportunity to establish his paternity, is simply inapplicable to Gene because Gene was afforded those rights.[6] *Page 260 
A court may not terminate the parental rights of an unwed father who promptly demonstrates a full commitment to his parental rights absent a showing of his unfitness as a parent. (Zacharia D., supra, 6 Cal.4th at p. 450.) Gene relies heavily on the following passage from our high court: "we held that [Civil Code] `section 7004, subdivision (a) and the related statutory scheme violates the federal constitutional guarantees of equal protection and due process for unwed fathers to the extent that the statutes allow a mother unilaterally to preclude her child's biological father from becoming a presumed father and thereby allowing the state to terminate his parental rights on nothing more than a showing of the child's best interest.'" (Ibid., quoting Kelsey S., supra,1 Cal.4th at p. 849, italics omitted.)
However, this case is not one where Gene was denied an opportunity to participate or to reunify with Eric. To the contrary, he was awarded reunification services. Those services were terminated because he tested positive for methamphetamine and failed to comply with the case plan. Gene disappeared from the proceedings for six months. His reunification services were terminated because his whereabouts were unknown. The court found reasonable efforts to reunify had been made and that placement of Eric in Gene's care "would create a substantial risk of detriment to the physical or emotional well-being of the child. . . ." The dependency system requires a "time-critical response." (Zacharia D., supra, 6 Cal.4th at p. 452.) Because Gene waited until after the reunification period was terminated and a section 366.26 hearing had been set he was required to raise the issue of his request for presumed father status in the context of a section 388 petition.
II. Gene Does Not Satisfy the Requirements of Section 388
Section 388 provides that a juvenile court may change an earlier issued order "[i]f it appears that the best interests of the child may be promoted by the proposed change of order. . . ." (§ 388, subd. (c).)
Gene argues that section 388 is inapplicable because he was not seeking to modify any order. Gene's argument would have more force if his motion had been filed at the detention hearing or shortly thereafter. However, his motion was filed after the juvenile court identified him and as an "alleged father." Thus, even though Gene did not expressly request a modification, such a modification — from alleged father to presumed father — was necessary for him to prevail. The juvenile court erred in applying a different test. *Page 261 
Even though the juvenile court applied a different test, it implicitly found that Gene did not satisfy the "best interests of the child" requirement when it stated that Robert "has been acting as the father, has conducted himself as the father, is looked at by the children as the father. And I'm sorry to say that's not the case with Mr. [E.]." (See Zacharia D.,supra, 6 Cal.4th at p. 456 [considering implied findings of juvenile court when evaluating motion that should have been section 388 petition].) The court also found that Eric was bonded with Robert and Michael.
The juvenile court's implicit finding that it is not in Eric's best interest to grant Gene presumed father status is supported by substantial evidence. (Zacharia D., supra,6 Cal.4th at p. 456 ["The juvenile court's finding of substantial risk of detriment under section 366.22, subdivision (a), which was supported by substantial evidence, indicates that it would have likewise found under section 388 that it was not in Zacharia's best interests to grant Javan reunification services or custody"].) Gene did not have custody of Eric at the time of detention, could not immediately be located, disappeared without informing DCFS of his address, tested positive for drugs during the reunification period, failed to visit Eric during the reunification period, failed to comply with the case plan, and showed minimal effort to act as a parent. Although Gene provides evidence that when Eric was born he assumed the role of father, there is no evidence of a change in circumstances from the time that Eric was detained when Gene did not have custody of Eric and did not assume the role of a parent.
Gene argues that it is in Eric's best interest to consider his motion for presumed father status because "Gene is in fact Eric's biological father and the man that Eric knew as his father during the first two years of his life. Eric remains in contact with his mother who undoubtedly will not allow Eric to forget that Gene is Eric's biological father. As Eric ages and goes through the process of identification, his need to know of and have contact with his biological family will grow stronger." Gene also points out that Robert had a prior history in the dependency system and had used drugs and caused Mother to obtain a restraining order.
Gene again relies on events that occurred prior to Eric's dependency proceeding. He identifies no change in circumstance during the relevant dependency proceeding, in which he acknowledged that he was unable to care for Eric. Once reunification is over, the court must focus on Eric's interest in stability, not in Gene's interest in maintaining family ties. (In re O. S. (2002) 102 Cal.App.4th 1402, 1412
[126 Cal.Rptr.2d 571].) Generally, a father seeks presumed father status either to reunify with his child or to obtain custody of *Page 262 
the child. (Jesusa V, supra, 32 Cal.4th at p. 610 ["A declaration of presumed fatherhood entitles the presumed father to reunification services and custody of the child"].) Here Gene failed to reunify and acknowledges that he is unprepared for custody of Eric. (See In re Joshua R. (2002)104 Cal.App.4th 1020, 1026 [128 Cal.Rptr.2d 241] ["Because a finding of paternity would not entitle Joshua to services or custody, and would not otherwise affect the course of this dependency proceeding, we conclude the juvenile court correctly found paternity irrelevant"].)
Gene's argument that his voluntary declaration of paternity carries the weight of a judgment is premature because he cannot show that he satisfies the threshold requirement of a section 388 petition. Gene's claim that it is improper to consider the best interest of the child in deciding presumed father status does not apply here because "`[u]p until the time the section 366.26 hearing is set, the parent's interest in reunification is given precedence over a child's need for stability and permanency.' [Citation.] `Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability.' [Citation.]" (Zacharia D., supra,6 Cal.4th at p. 447.)
III. Gene Lacks Standing to Contest Robert's Status as Presumed Father
Gene makes numerous arguments regarding why, in his view, the trial court erred in finding Robert to be Eric's presumed father. Specifically, he argues Robert could not qualify as Eric's presumed father under Family Code section 7611
or 7612. Gene lacks standing to challenge the juvenile court's finding that Robert is Eric's presumed father. "An alleged father is entitled to notice so that he may change his paternity status, but he has no standing to challenge other orders." (In re Alyssa E, supra, 112 Cal.App.4th at p. 855;In re Karla C. (2003) 113 Cal.App.4th 166, 179
[6 Cal.Rptr.3d 205].) Gene had notice of the proceedings and an opportunity to change his paternity status. However, he chose not to attempt to establish presumed father status until after the section 366.26 hearing had been set. He has no standing to challenge the order awarding Robert presumed father status.[7] *Page 263 
 DISPOSITION
The order awarding Robert presumed father status and denying Gene presumed father status is affirmed.
Rubin, J., and Flier, J., concurred.
A petition for a rehearing was denied April 3, 2006, and appellant's petition for review by the Supreme Court was denied May 24, 2006, S142592.
[1] All undesignated statutory citations are to this code.
[2] Robert is this father's middle name but appears to be the name he uses.
[3] Robert and Mother have other children who were removed from their care. None of the issues in this appeal are relevant to those children. While the record shows that Robert has a history of drug abuse, during the pendency of this proceeding he always tested clean.
[4] This was Robert's third such request and Gene's first.
[5] It is appropriate to order reunification services for an alleged father who filed a declaration of paternity where the court finds such services will benefit the child. (In reRaphael P. (2002) 97 Cal.App.4th 716, 726, fn. 7 [118 Cal.Rptr.2d 610].)
[6] Gene relies on Adoption of Michael H. (1995)10 Cal.4th 1043 [43 Cal.Rptr.2d 445, 898 P.2d 891]. That case held that "an unwed father has no federal constitutional right to withhold consent to an at-birth, third party adoption . . . unless he shows that he promptly came forward and demonstrated as full a commitment to his parental responsibilities as the biological mother allowed and the circumstances permitted within a short time after he learned or reasonably should have learned that the biological mother was pregnant with his child." (Id. at p. 1060.) This is not a case where a mother prevented Gene from attaining presumed father status. That case is not helpful to analyzing the issues in this case.Adoption of Kelsey S. (1992) 1 Cal.4th 816
[4 Cal.Rptr.2d 615, 823 P.2d 1216] (Kelsey S.) andJohnson v. Calvert (1993) 5 Cal.4fh 84 [19 Cal.Rptr.2d 494, 851 P.2d 776] also do not bear on the issues in this case. The issue in Kelsey S. was whether "the father of a child born out of wedlock may properly be denied the right to withhold his consent to his child's adoption by third parties despite his diligent and legal attempts to obtain custody of his child and to rear it himself, and absent any showing of the father's unfitness as a parent." (Kelsey S., at p. 821.) In Johnson v. Calvert, supra,5 Cal.4th at page 87, the high court considered the meaning of "natural mother" in the context of a surrogacy arrangement.
[7] We grant DCFS's request for judicial notice of Nevada Revised Statutes sections 449.246 and 440.280. We previously granted Gene's and Robert's requests to take judicial notice of Nevada statutory law. (See Evid. Code, § 452.)
We decline DCFS's request to take judicial notice of the California declaration of paternity and notice to unmarried parents. These documents were not presented in the trial court, and DCFS has not demonstrated they are a proper subject of judicial notice. *Page 264