Filed 2/16/16  F.P. v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| F.P.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT FOR THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Respondent;<br><br>HUMAN SERVICES AGENCY OF SAN FRANCISCO COUNTY,<br><br>        Real Party in Interest. | A146685<br><br>(City & County of San Francisco Super. Ct. No. JD 15-3287) |

Petitioner F.P., the alleged father of infant F.R., challenges (1) the juvenile court's October 27, 2015 order, finding allegations against him in the Welfare and Institutions Code section 300[1] petition to be true, denying the parents'[2] reunification services and setting a section 366.26 hearing,  and (2) the November 30, 2015 order denying petitioner's application for rehearing.  For the reasons explained below, we shall deny the petition.

_____

[1] Unless otherwise noted all statutory references are to the Welfare and Institutions Code.

[2] The October 27, 2015 order dealt with both parents; only F.P., however, filed a petition challenging the order.  Consequently, we shall focus on those aspects of the case affecting him, discussing the mother only as is necessary to provide needed context.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The day after F.R.'s birth, an anonymous report to the San Francisco Human Services Agency (agency) indicated that his mother tested positive for amphetamines after delivering her child. The mother was homeless, had no food, and had made no preparations for the baby. She also had received no prenatal care. F.R.'s drug testing was still pending at the time, but he was jittery without being stimulated. The agency had been involved with the mother's four other children, three of whom were living with their maternal grandmother.

The mother reported physical, verbal, and sexual abuse by the child's father. The father's whereabouts were unknown at the time; he had been jailed in June 2015 but had been released. The mother had attempted to hide the pregnancy from him, claiming that she had miscarried.

In a subsequent interview with the agency social worker, the mother confirmed that she was homeless and lacked provisions for F.R. She admitted daily use of alcohol and methamphetamine before she learned she was pregnant (when she was five months pregnant), at which time she reduced her use of illicit substances to once every four days. She had not seen the father since mid-June, when he was arrested. She described the father as controlling and abusive, capable of going through an extreme range of emotions—from cursing at her to declaring his love for her—within five minutes. She was afraid of him and did not want him to know about F.R. She claimed that he too used drugs. She asserted that he would not allow her to be away from him for more than two-hour intervals, even if she was going to see her children. She also stated that there had been a period of time, when she was using drugs and the father was keeping her isolated, when she began to hear voices. After that, the father would threaten to "make her hear voices again." She described the domestic violence she suffered as being "worse than death." She also reported that their parental rights to an older child had been terminated in January 2015.

The day after the mother's initial interview with the agency social worker, the hospital confirmed that F.R. had tested positive for amphetamines. Also, the mother

2

informed the social worker that she did not really know who F.R.'s father was and that her earlier comments were really about the older half-sibling's father.

Although the mother appeared at the September 29, 2015 detention hearing, F.P. did not. With respect to F.P., the section 300 petition alleged that he had been in a physically, verbally, and sexually abusive relationship with mother and that this history, coupled with the parents' substance abuse, placed F.R. at risk for further abuse and/or neglect. It also alleged that the alleged father had a substance abuse history and was unable to provide the child with proper care, having failed to protect him from the mother. It stated that the alleged father's social and criminal history had not yet been assessed, that he had failed to establish his paternity, that his whereabouts were currently unknown, and that he had not provided care or support for the child when the mother was unable to do so.

The court found that the required notice of the hearing had been given, that a prima facie case had been made that F.R. came within section 300, and that he should be detained and placed with a nonrelated extended family member. A settlement conference was set, as was a "J1" hearing as to F.P.[3]

On October 9, 2015, the agency filed a declaration of due diligence concerning its efforts to locate F.P. The declarant reported that on September 25, 2015, she had spoken with a San Bruno jail employee and learned that F.P. had been transported to court earlier that day. When she followed up with jail officials later in the day she learned that F.P. would not be returning to the jail, but had been sentenced or released. In a subsequent call with the adult probation department, the declarant learned that F.P. had been released on three years' probation, but a probation officer had not yet been assigned to his case. On October 9, 2015, after F.P. had been assigned a probation officer, the declarant spoke with the officer and was instructed to email him a letter and the officer would be certain that F.P. received it. That same day the declarant sent the requested email, with an

---

[3] At the hearing, the juvenile court confirmed that F.P.'s whereabouts had been ascertained.

3

attached letter addressed to F.P. In addition, the declarant identified the address where F.P. had been receiving food stamps up until January 2015 and sent him a telegram there.

On October 13, 2015, the juvenile court found that the required notice to F.P. had been given. It also ordered the agency to confirm whether F.P. received notice and found that his failure to appear was without prejudice at that time. The court continued the matter to the previously noticed settlement conference on October 27, 2015.

On October 21, the agency filed its jurisdiction/disposition report in preparation for the settlement conference, recommending that reunification services be denied to the parents and that the court set a section 366.26 hearing. With respect to F.P., the report indicated that section 361.5, subdivision (b)[4] was applicable and that F.P. had not achieved presumed father status. Both parents failed to reunify with one child on July 3, 2014, and their parental rights to that child had been terminated on January 9, 2015. The same concerns that had "permeated" the earlier case involving both parents were present in the instant case.

The record before us does not disclose whether the settlement conference took place and was unsuccessful or simply did not take place. Regardless, no settlement was recorded and a court commissioner held a "*Dolly D.*" hearing as to the mother on jurisdiction and disposition that same day.[5] At the *Dolly D.* hearing, however, F.P. appeared for the first time and counsel was appointed for him. The attorney "object[ed] vehemently" to proceeding with the hearing, asserting that F.P. had not received notice of the hearing. F.P. denied having been informed of the proceedings by his probation officer and asserted he learned of the hearing only three days earlier from a letter that had been sent to his mother's home. He requested paternity testing and reiterated his objection to the court determining jurisdiction before he had an adequate opportunity to

---

[4] The statute lists various valid reasons for declining to provide reunification services to a parent. (§ 361.5, subd. (b).)

[5] Although the mother had been present earlier, she was absent from the hearing. In *In re Dolly D.* (1995) 41 Cal.App.4th 440 the court held it was reversible error to deny the request of the attorney for an absent party to cross-examine the social worker who had authored a report submitted to and relied on by the lower court.

4

investigate and present his case for presumed father status. In response, the city attorney reminded the court that, in an effort to notify F.P. of the hearing, a telegram and letter had been sent to a Vienna Street address and a letter had been sent to an Edinburgh Street address.[6] The juvenile court withdrew the October 13 finding, made without prejudice, that F.P. had willfully failed to appear. F.P. argued that the Vienna Street address was 10 months old; he conceded he had learned of the hearing through the notice that had been sent to the Edinburgh Street address, his parents' home, but maintained that because he did not live there, he had not received proper notice and thus had no opportunity to prepare. He pointed out that his counsel had just been appointed five minutes earlier. Implicitly overruling his objection, the court proceeded to conduct the hearing. After other counsel submitted the matter, F.P.'s counsel argued that she, in essence, had been unable to provide F.P. with effective assistance of counsel because she was not given an opportunity to investigate and prepare her case. The juvenile court disagreed, which led to an off-the-record discussion.

At the conclusion of the hearing, the juvenile court declared F.R. to be a dependent of the juvenile court and committed him to the agency for placement, planning, and supervision. Because section 361.5, subdivision (b)(10) was found to be applicable to the mother and because F.P. was determined to be an alleged father who had not offered himself to be a parent, no reunification services were provided to the parents. The court did, however, order a paternity test. It also set a section 366.26 hearing for March 2, 2016.

That same day, October 27, 2015, F.P. filed a notice of intent to file a writ petition, which he then amended on November 5, 2015.[7] On both forms he listed his address as the Edinburgh Street address—the address to which notice of the October 27 hearing had

---

[6] The Vienna Street address had been identified as the last address at which F.P. had received food stamps. The Edinburgh Street address was listed as F.P.'s address in the agency's jurisdiction/detention report.

[7] The amended notice merely listed additional hearing dates that were relevant to the challenged order.

been sent.  On November 9, 2015, F.P. applied for rehearing, again contending that he had received inadequate notice and that his counsel had been appointed five minutes before the hearing, thereby providing inadequate opportunity to prepare the case.[8]  On November 30, 2015, a judge of the juvenile court denied the application for rehearing. The court  also held that the request for a continuance was moot, given that the application for a rehearing was denied.

The court filed written additions to the minutes on December 8, 2015, noting that F.P.'s request for a continuance to prepare for the jurisdiction/disposition hearing and his request that allegations concerning him be stricken from the petition had been denied by a commissioner. The court held that, as an alleged father, F.P. lacked standing to request a continuance.  It was speculative whether he would be able to achieve presumed father status and whether placing the infant with F.P.'s relatives would reduce his chances of obtaining reunification services.  Furthermore, if he were found to be the presumed father, his parental rights would not be terminated absent a finding based on clear and convincing evidence that he was an unfit parent.  Accordingly, the court reaffirmed the denial of the request for a rehearing.

F.P. timely filed a notice of intent to file writ petition and timely filed two writ petitions challenging the October 27 and November 30 orders.  At his request the two petitions have been consolidated for all purposes.

## DISCUSSION

Petitioner makes three substantive arguments:  (1) that as an alleged father he is not the proper subject of a section 300 petition; (2) that the juvenile court's finding that adequate notice of the hearing had been given is not supported by substantial evidence; and (3) that the juvenile court abused its discretion by refusing to continue the jurisdictional and dispositional hearings until paternity was determined.

---

[8] Section 252 allows a minor, the minor's parent or the county welfare department to apply to the juvenile court to rehear a matter previously decided by a referee.

Our review of a juvenile court's findings is pursuant to the substantial evidence standard. (See, e.g., *In re David M.* (2005) 134 Cal.App.4th 822, 829; *In re Carmaleta B.* (1978) 21 Cal.3d 482, 489.) We review the juvenile court's rulings on continuance requests for abuse of discretion. (*In re F.A.* (2015) 241 Cal.App.4th 107, 117.)

1. *Whether petitioner is a proper subject for allegations pursuant to section 300 is not a justiciable issue.*

Appellate courts entertain only justiciable issues. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489.) We decide a case only if it is possible to grant effective relief—i.e., relief that will have a practical, tangible impact on a party's conduct or legal status. We decide actual controversies and do not entertain speculative or theoretical questions. (*Id.* at p. 1490.)

Furthermore, the main focus of dependency law is to protect children. (*In re I.A., supra,* 201 Cal.App.4th at p. 1491.) The juvenile court asserts jurisdiction over the child when one of the statutory conditions listed in section 300 is demonstrated. (*Ibid.*) Although personal jurisdiction over the parents allows the court to enter binding orders affecting their relationship to the child, it is not required for the court to proceed once jurisdiction over the child is obtained. (*Ibid.*; *In re Daniel S.* (2004) 115 Cal.App.4th 903, 916.) Once one of the conditions enumerated in section 300 has been demonstrated, the child comes within the court's jurisdiction even if the child is not in either parent's physical custody. (*In re I.A., supra,* at p. 1491.)

Applying these two principles, we decline to reach the question of whether it was proper to include in the section 300 petition allegations regarding F.P.'s conduct. "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.) Here, the juvenile court found all the allegations in the petition that solely concerned the mother to be true. Specifically, (1) she tested positive for amphetamines while giving birth to F.R., placing him at risk; (2) she was not receiving treatment for self-reported mental health issues which affected her ability to care for F.R.; (3) she was homeless and was unable to protect F.R.; (4) she has an extensive history with child protective services reflecting her

7

inability to provide food, clothes, a clean home, and daily care for her older children, and (5) she has three older children who were all dependents of the juvenile court. None of these allegations has been challenged. Thus, the juvenile court properly asserted jurisdiction; whether the allegations regarding F.P. are appropriately included makes no difference to the juvenile court's assertion of jurisdiction or its disposition of this case. Because the inclusion of these allegations in the petition has no practical effect, the propriety of their inclusion is a nonjusticiable issue that we decline to decide.

The fact that F.P.'s status has not been elevated to that of presumed father is a further reason for not reaching this question. An alleged father may be the child's father, but his biologic relationship to the child has not been established. (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715.) Because paternity has not yet been established, F.P. lacks a current interest in this matter. (*Ibid*.) To have standing in a dependency matter, a parent must be aggrieved by an order that adversely affects the parent-child relationship. (*In re Paul W.* (2007) 151 Cal.App.4th 37, 62.) F.P has not established a parental relationship and, thus, lacks standing to challenge the juvenile court's jurisdictional and dispositional orders.

2. *Any defect in the notice of the proceedings was harmless*.

Any man who is identified as an alleged father is to be given notice, at his last and usual place of abode by certified mail return receipt requested, that he is or could be the father of the child who is the subject of section 300 proceedings. The notice should explain that the proceedings may result in the termination of parental rights and adoption of the child. (§ 316.2, subd. (b).) If the address is unknown, it should be determined, if practical, with due diligence. (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1352.) The purpose of the notice is to allow the alleged father to elevate his paternity status. (*In re Eric E.* (2006) 137 Cal.App.4th 252, 257.)

On September 25, 2015, the agency attempted to locate F.P. It ascertained that he was not in a California prison or federal custody. It contacted the county Family Support Bureau and adult probation in an attempt to locate him. The agency subsequently

8

(1) contacted the jail where F.P. was believed to be; (2) contacted the probation officer, when the officer was designated, (3) sent a letter and telegram to F.P.'s last known address where he received food stamps, and (4) sent a letter to his parents' home. It was from the letter sent to his parents' home that he learned of the proceedings. He continued to use that same address when filing court documents related to this writ petition.

F.P. asserts that nothing in the record indicates that a "certified mail, return receipt requested" letter, as required by section 316.2, was sent to him. That is apparently correct, but the omission is at most a harmless error. (See *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1122 [procedural errors are not a basis for reversal unless they result in a miscarriage of justice].) There is no indication that a certified letter, return receipt requested would have provided faster or better notice. More important, F.P. appeared at the hearing, so that he did have actual notice. Moreover, in subsequent filings with this court he has continued to list as his current address the Edinburgh Street address to which notice was mailed.

F.P.'s real complaint is that he did not receive timely notice and that an attorney was appointed to represent him only minutes before the hearing, so that he was deprived of an opportunity to prepare his case adequately. But notice to an alleged father is necessary simply to ensure that he has the opportunity to challenge his paternity status. (*In re Christopher M.* (2003) 113 Cal.App.4th 155, 160.) It is undisputed that at the October 27 hearing F.P. requested and the court ordered paternity testing. Thus, the notice he received was adequate to accomplish everything to which he was entitled at that hearing. That he was not prepared to respond to other issues at that time is irrelevant, since he was not then entitled to do so. Thus, even if the absence of a proof of service indicates that he was not given notice by means of a certified letter, return receipt requested, the omission was harmless.

9

3. *The juvenile court did not abuse its discretion in declining to stay proceedings pending a determination of F.P.'s paternity status.*

As F.P. acknowledges, the trial court is "accorded wide discretion" in ruling on a stay request. An appellate court will not disturb the lower court's decision absent "a manifest showing of abuse." (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067; see also *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 605; *In re F.A., supra,* 241 Cal.App.4th at p. 117.) In dependency cases continuances are discouraged; the juvenile court, however, has discretion to grant a continuance if not contrary to the minor's interests. It must give substantial weight to the minor's need for a prompt resolution of his case, the need to provide a stable environment, and the damage a minor suffers from prolonged temporary placements. (§ 352, subd. (a); *In re F.A., supra,* at p. 117.)

F.P.'s argument is premised on the contentions that his paternity would determine whether jurisdiction exists and that *if* he were the presumed father, he would be in a position to provide F.R. with a safe home. As discussed above, however, the juvenile court's assumption of jurisdiction over F.R. is proper regardless of F.P.'s status. The unchallenged allegations regarding the mother are sufficient for the juvenile court to assert jurisdiction. Furthermore, the agency points out that as of the date of its response—January 7, 2016—F.P. had still not moved to have his status elevated to that of presumed father. Thus, the record provides no indication of when the paternity issue might be resolved. As an alleged father, F.P. had no right to a continuance. (See *In re Karla C.* (2003) 113 Cal.App.4th 166, 179-180.) The juvenile court did not abuse its discretion in declining to delay the proceedings for an indefinite period of time in order to allow for the theoretical possibility that F.P. might establish his paternity, have his status elevated, and then demonstrate his ability to provide for F.R.'s safety and physical and emotional needs.

## DISPOSITION

The petitions for an extraordinary writ are denied. Our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

10

_____
Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.

A146685

11