Filed 9/8/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.W.-P., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. R.P., Intervener and Appellant. | A156550 (Alameda County Super. Ct. No. JD-028932-01) |

The Alameda County Social Services Agency ( "Agency") took J.W.-P. ("minor" or "daughter") into custody and initiated a juvenile dependency case after her mother ("mother") was arrested and incarcerated. Mother testified in the dependency proceedings that R.P. ("father") is minor's father, lived with and cared for his daughter during the first two years of her life, acknowledged minor as his daughter, and was subject to a child support order in another state. However, contrary to Welfare and Institutions Code section 316.2, subdivision (b),[1] and California Rules of Court, rule 5.635(g), the trial court clerk never provided father with notice of the procedure he should follow to

---

[1] Undesignated citations are to the Welfare and Institutions Code.

1

establish that he is minor's father and to protect his parental rights. Because we conclude father was prejudiced by this failure, we reverse.

## BACKGROUND

### A.

In a dependency case, "a man's status as a presumed or biological father is critical to whether he retains his rights to his child." (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1410 (*O.S.*); see also *In re Paul H.* (2003) 111 Cal.App.4th 753, 760 (*Paul H.*).) A presumed father is one who "receives the child into [the parent's] home and openly holds out the child as [the parent's] natural child." (Fam. Code, § 7611, subd. (d); see *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 119.) A biological father is one who has established his paternity but has not established his qualification as a presumed parent. (*In re T.G.* (2013) 215 Cal.App.4th 1, 4 (*T.G.*).) An alleged father has established neither biological nor presumed father status. *(Ibid.)* Alleged fathers have "fewer rights" and, unlike presumed fathers, "are not entitled to custody, reunification services, or visitation." (*O.S.*, *supra*, 102 Cal.App.4th at p. 1410; *Paul H.*, *supra*, 111 Cal.App.4th at p. 760; *T.G.*, *supra*, 215 Cal.App.4th at pp. 4-5.) A court may order reunification services for biological fathers if they are in the child's best interest but may not do so for alleged fathers. (*O.S.*, *supra*, 102 Cal.App.4th at p. 1410.)

Despite father's consistently stated desire to gain custody of his daughter, he was deemed an "alleged" father at all stages of these proceedings.

**B.**

After police arrested their mother in October 2017 for being in possession of two stolen vehicles, ten-year-old minor and her two half-brothers were found at a homeless encampment and detained by the Agency. The Agency filed a juvenile dependency petition pursuant to section 300, subdivision (b).

At a detention hearing on November 2, 2017, the trial court conducted a paternity inquiry. Mother testified that father is minor's father. Mother and father lived together for approximately four years, starting from before minor was born until she was two years old. During that time, mother and father jointly raised minor, together with mother's other children, as a family. Mother and father planned to get married, but they separated in 2009.

Father subsequently participated in child support proceedings in Nevada, acknowledged minor as his child, and was subject to an order to pay child support for her. Father lived in Reno, Nevada, and he arranged visits with minor through her maternal grandfather. Minor had last visited with her father during the summer.

After hearing mother's testimony, the court stated that it would make no formal finding regarding paternity that day. The court concluded that the detention of the children was necessary and that the temporary care, custody, and placement of the children would be vested with the Agency.

On November 17, 2017, after the Agency filed a first amended petition naming father as minor's alleged father, the court found the amended petition's allegations true, declared the children dependents of the court, and ordered family reunification services for mother. After

3

several months, they were placed at their maternal grandfather's home.

At an August 30, 2018, hearing, the court granted the children's request to terminate reunification services for mother and concluded that the children's out-of-home placement with their maternal grandfather continued to be appropriate. The court ordered that a hearing to adopt a permanent plan for the children pursuant to section 366.26 would be held on December 20, 2018.

On December 20, 2018, the court held a hearing pursuant to section 366.26 to select a permanent plan for minor and her half siblings. As a permanent plan, the court ordered a legal guardianship by the children's maternal grandfather and step-grandmother. The permanent plan was consistent with the children's wishes and the Agency's determination that it would be detrimental to separate the siblings. The court also ordered visitation for mother.

On January 31, 2019, the court held a hearing to address the Agency's ex parte request that the court terminate the dependency. The Agency sought immediate dismissal of the dependency because financial support for the guardianship was conditioned on dismissal by February 2. The court dismissed the dependency, retaining general jurisdiction.

## C.

During the pendency of the proceedings, father maintained his relationship with minor and consistently stated that he wanted custody of her.

Prior to a six-month review hearing in May 2018, the social worker filed a report with the court that detailed the Agency's contacts

4

with father.  Father had repeatedly contacted the Agency beginning in November of 2017, stating that he was minor's father and wanted custody of his daughter.  In December, after father stated his desire for custody, the social worker advised him to ask for an attorney to be assigned to him so that he could be represented in court and elevated to presumed father status.

A few weeks later, father contacted the social worker to tell her that he had a birth certificate for minor listing him as her father, and he mailed the birth certificate to the social worker.  That same month, he attended a meeting with the social worker in which he stated that, while he agreed that minor should remain with her siblings, he wanted his daughter placed with him and his fiancé.

During spring break in 2018, minor visited with father and his family for two days.  Minor reported to the social worker that she had "a lot of fun."  In May, minor indicated to the social worker that her father was "important" to her.  By late June, father had visited minor three times at her placement home.

The social worker's report filed in advance of the August 30, 2018, hearing indicated that father "has maintained his desire to have [minor] placed with him[.]"

A December 2018 report by the social worker indicated that minor "sees her father regularly" and that she "has visited with her father on multiple occasions, the last visit being 11/03/2018."  Minor told the social worker that "her parents are important people in her life" and that she "wants to remain . . ., close to her father."  The social worker also reported that minor "has connections with her own father

and her extended family members, which seems to help [her] feel emotionally settled."

## D.

The trial court appointed a series of three separate attorneys or legal organizations to represent father between March of 2018 and January of 2019 although, as explained below, father was effectively unrepresented during a critical period.

Father's first attorney requested appointment in March 2018 specifically to "address his paternity status" but took no action in court to do so during the five-plus months he represented father. Indeed, at one of the four hearings at which this attorney appeared on father's behalf, he remained silent while the attorneys for the fathers of minor's half-siblings both asked the court to adjudge them presumed fathers. Ultimately, on August 31, 2018, the court granted the first attorney's request to be relieved as father's counsel because his contract with Juvenile Dependency Counselors was set to expire, and the court appointed East Bay Family Defenders to represent father.

East Bay Family Defenders was unable to represent father because it was already representing three other parties in the dependency proceedings—a fact that the court learned months later. Father was unrepresented from August 31, 2018 (the day after the court set a hearing to adopt a permanent plan) to January 31, 2019 (the hearing to dismiss the dependency). No attorney appeared on father's behalf at the December 20, 2018, hearing in which the court adopted the permanent plan.

The court located and appointed a third attorney during the dismissal hearing on January 31, 2019. At the beginning of the

hearing, the court noted that no counsel was present on father's behalf. It acknowledged that "[w]e conducted our last proceeding [December 20], . . ., without counsel present for [him]. That was an error." During the hearing, a court officer then located an attorney to represent father. She had no prior knowledge of the case. The court offered her an opportunity to contact her client. However, she had been told that grant funding for the guardianship was set to expire in two days and that father's status was merely an alleged father. Counsel declined the opportunity to speak with father and submitted to the dismissal on the spot.

About a week later, after father received the minute order dismissing the action, he located the attorney who represented him at the dismissal hearing (her name was on the minute order) and told her that he wanted custody of his daughter, had told this to the Agency, and had provided the Agency a copy of minor's birth certificate stating he is her father. Counsel later said that her telephone call with father "disturbed me greatly" and that she had relied on "inaccurate and incomplete information" when she submitted to the dismissal.

## DISCUSSION

### A.

As an initial matter, the Agency asserts that father does not have standing to appeal because he is an alleged father who never personally appeared in the dependency proceedings. (See *In re Emily R.* (2000) 80 Cal.App.4th 1344, 1356-1357 [to become a party, an alleged father must appear and take a position].) We disagree.

The Agency provides no reason why father's appearances through counsel should be deemed insufficient to establish standing, and we can

7

think of none.  Ordinarily, in civil proceedings, personal appearance by a party is not required, and "appearance by an attorney is sufficient and equally effective." (*In re Dolly D.* (1995) 41 Cal.App.4th 440, 445.) Father, who lived in Nevada, instructed an appointed attorney to represent him in the proceeding and to "address his paternity status and related issues." He repeatedly told the social worker that he wanted custody of his child, and he provided a birth certificate naming him as the father. Father has standing. (See *Paul H.*, *supra*, 111 Cal.App.4th at p. 759 [alleged father had standing where he contacted social worker, communicated to court he might be the father, and tried to complete paternity testing].)

**B.**

Before we turn to the merits, we must also resolve whether father's appeal is timely. We conclude that it is.

**1.**

Father asserts the trial court erred in failing to provide him with notice regarding the procedure he should follow to obtain a judgment of parentage from the court. (See § 316.2, subd. (b); Cal. Rules of Court, rule 5.635(g).) He argues this error occurred throughout the proceedings, including at the time of the August 30, 2018, hearing (during which the court set the section 366.26 hearing to select a permanent plan), as well as at the time of the section 366.26 hearing. As to the August 30 hearing, the Agency argues that his appeal is untimely.[2]

---

[2] Although father's claim of error as to the December 20, 2018, section 366.26 hearing is indisputably timely, we nonetheless must consider the timeliness of his claim as to the August 30, 2018, hearing because it affects the potential remedy on remand. If the trial court

8

Ordinarily, a party seeking review of an order setting a section 366.26 hearing must file notice of intent to file a petition for extraordinary writ review within strict timeframes set forth in the California Rules of Court, rule 8.450(e)(4).  (See also § 366.26, subd. (l).)  Here, father should have filed a notice of intent within 17 days after the clerk mailed a notice setting the hearing.  (Cal. Rules of Court, rule 8.450(e)(4)(C).)  The clerk's notice is crucial—it advises the parties they must file a timely writ petition to preserve their right to appeal.  (See § 366.26, subd. (l).)

The Agency concedes that the clerk of the court failed to provide the requisite notice to father.

**2.**

When, as here, the trial court fails to notify a party of the need to file a writ petition, the party's failure to file a writ petition is excused, and the party may seek review on appeal from the disposition following the section 366.26 hearing.  (See, e.g., *In re Frank R.* (2011) 192 Cal.App.4th 532, 539 [excusing father's failure to seek writ review where the trial court failed to provide notice, and reviewing his claims on the merits on direct appeal]; accord *In re Harmony B.* (2005) 125 Cal.App.4th 831, 838-39; *In re Cathina W.* (1998) 68 Cal.App.4th 716,

---

sets a section 366.26 hearing, it must terminate reunification services. (See Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2019) § 2.153 [4].)  Further, "if a man fails to achieve presumed father status prior to the expiration of any reunification period . . . . [h]is only remedy . . . [i]s to file a motion to modify under section 388." (*In re Zacharia D.* (1993) 6 Cal.4th 435, 453.)  In contrast, if father successfully challenges the trial court's August 30, 2018, order setting the 366.26 hearing, then he may request presumed father status without meeting the heightened requirements of a section 388 petition.

9

723-724.)  It would be unjust to penalize father for his failure to file a timely writ petition when the court failed to comply with its obligation to provide him with notice of the steps he needed to take to preserve his rights.  This is particularly true given that father's appointed counsel withdrew his representation the day after the hearing, and, due to court error, father had no attorney for the next five months.  Accordingly, father may pursue his claims concerning the August 30, 2018, hearing in this appeal.

## C.

On the merits, we hold that the trial court erred by failing to send father a crucial statutory notice advising him of the process for elevating his status from alleged father and the consequences of not doing so.

Section 316.2, subdivision (b), provides that:

> each alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the termination of parental rights and adoption of the child.  Judicial Council form Paternity-Waiver of Rights (JV-505) shall be included with the notice.

(See also Cal. Rules of Court, rule 5.635(g) [requiring the clerk to provide alleged parents with a copy of the petition, notice of the next scheduled hearing, and form JV-505].)  Form JV-505 explains that an alleged parent will not receive reunification services and will not "automatically get the child to live with you or your relatives."  (See *In re Marcos G.* (2010) 182 Cal.App.4th 369, 384 (*Marcos G.*); see also *Paul H.*, *supra*, 111 Cal.App.4th at p. 761.)  Further, the form provides

10

notice that if the alleged parent wants the court to decide if he is the minor's parent, he should fill out form JV-505, and it provides options to request that the court make a determination concerning parentage. (*Marcos G.*, *supra*, 182 Cal.App.4th at p. 384; *Paul H.*, *supra*, 111 Cal.App.4th at p. 761.)  California Rules of Court, rule 5.635(h), in turn provides that "[i]f a person appears at a hearing in [a] dependency matter . . . and requests a judgment of parentage on form JV-505, the court must determine" whether an alleged parent should be elevated to a higher status—either a biological parent or presumed parent.

"Section 316.2 is designed to protect the alleged father's limited due process rights."  (*In re Eric E.* (2006) 137 Cal.App.4th 252, 257, citing *Paul H.*, *supra*, 111 Cal.App.4th at p. 760; see also *In re Kobe A.*, 146 Cal.App.4th 1113, 1120 (*Kobe A.*).)  The notice required in section 316.2 provides an alleged father with critical information about an alleged parent's limited rights and explains the procedure he must follow to establish his paternity status: complete form JV-505.  The court's "[f]ailure to provide the statutory notice denie[s]" an alleged father "adequate notice of his rights and the ability to access the procedure for establishing paternity, obtaining reunification services, and ultimately seeking placement of his [child] in his home or with one of his relatives."  (*Kobe A.*, *supra*, 146 Cal.App.4th at pp. 1122-1123; see also *Paul H.*, *supra*, 111 Cal.App.4th at p. 761.)

The Agency concedes that the trial court never provided the requisite notice.  During the pendency of this appeal, the trial court clerk searched the record, as well as the records in the cases associated with minor's step-siblings, and confirmed that he was unable to locate proof that father received the notice required by section 316.2.

11

Contrary to the Agency's argument, the error here was not harmless. (See, e.g., *Kobe A.*, *supra*, 146 Cal.App.4th at pp. 1122-1123 [applying harmless error analysis]; *Paul H.*, *supra*, 111 Cal.App.4th at p. 761 [same].) Throughout the proceedings, father consistently maintained that he wanted custody of his daughter. Had he received the requisite notice, and submitted form JV-505, the court would have been obligated to make a determination as to his paternity. (Cal. Rules of Court, rule 5.635(h).) Attaining presumed father status would have allowed father to seek custody and otherwise protect his parental rights. (See, e.g., *O.S.*, *supra*, 102 Cal.App.4th at p. 1411; *Paul H.*, *supra*, 111 Cal.App.4th at p. 760.) The Agency does not contest that, on this record, father likely would have qualified as a presumed parent. (See Fam. Code, § 7611, subd. (d) [presumed parent status requires person "to demonstrate an established parental relationship with the minor and commitment to the minor's well-being."]; *In re Alexander P.* (2016) 4 Cal.App.5th 475, 493.)

Finally, the facts in this case underscore that the direct notice to the parent mandated by section 316.2, subdivision (b), is critical even in cases in which a presumed parent may be represented by counsel. Here, the social worker advised father that he should get an attorney to elevate his status to presumed father. Heeding that advice, father obtained representation by an attorney who sought appointment expressly to address his paternity status but did nothing in the trial court to do so. After that attorney withdrew, the court appointed a legal services agency that was unable to represent father. As a result, unbeknownst to the court, father was effectively unrepresented for five months. No counsel appeared on father's behalf at the section 366.26

12

hearing.  When the court discovered father's unintended lack of counsel, an attorney summoned from outside the hearing room accepted the representation on the spot, declined the court's suggestion that she speak with her new client, and submitted to dismissal of the dependency without ever ascertaining father's wishes.  The notice provided by section 316.2 is a failsafe mechanism that would have told father directly the steps he himself could take – without relying on an attorney – to establish his paternity status and protect his rights.  It could have made all the difference to father in this case.

We conclude that father was prejudiced by the trial court's failure to provide him with the notice mandated by section 316.2 and California Rules of Court, rule 5.635(g).  (See *Paul H.*, *supra*, 111 Cal.App.4th at p. 761 [court's failure to serve alleged father with JV-505 violated his statutory rights and was prejudicial where alleged father may have established paternity].)  We need not reach the parties' other contentions, including father's claim of ineffective assistance of counsel.

## DISPOSITION

The portion of the juvenile court's August 30, 2018, order setting a section 366.26 hearing is vacated.  The court's December 20, 2018, and January 31, 2019, orders are likewise vacated, and the matter is remanded with directions to comply with the provisions set forth in section 316.2 and California Rules of Court, rule 5.635(g).

_____
BURNS, J.

We concur:

_____
JONES, P.J.

_____
NEEDHAM, J.

A156550

Alameda County Superior Court, Case No. JD-028932-01, Hon. Arturo Castro

S. Lynne Klein, Appointed by the Court of Appeal, for Intervener and Appellant.

Office of the County Counsel, Alameda County, Donna R. Ziegler, County Counsel, and Samantha N. Stonework-Hand, Senior Deputy County Counsel, for Plaintiff and Respondent.