[No. A025235. First Dist., Div. Five. May 1, 1985.]

ROBERT MORALES, Plaintiff and Appellant, v.
COASTSIDE SCAVENGER COMPANY et al., Defendants and
Respondents.

## COUNSEL

Beeson, Tayer & Silbert, Duane B. Beeson and Marie M. Rongone for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Cynthia H. Plevin, Darryl M. Woo and Lisa S. Spann for Defendants and Respondents.

## OPINION

**HANING, J.**— ■ ■■■ In this action for libel, plaintiff/appellant Robert Morales appeals from an order granting summary judgment in favor of defendants/respondents Coastside Scavenger Company (Coastside) and Mario Torrigino.[1] We affirm.

---

[1] An order granting a motion for summary judgment is nonappealable. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 68, 69, at pp. 4082-4083.) However, a premature appeal may be treated as an appeal from a subsequently entered judgment. (Cal. Rules of Court, rule 2(c); 6 Witkin, Cal. Procedure, *supra,* §§ 366, 367, at pp. 4339-4340.) The judgment was later entered, and we treat the appeal as being taken therefrom.

As the secretary-treasurer of Sanitary Truckdrivers and Helpers Local 350 (union), appellant acts as the union's collective bargaining agent. Respondent Torrigino is the manager of Coastside and represents the company in its dealings with the union. The two men apparently have had a long and stormy relationship.

The present dispute began in October 1981 when Torrigino learned that the United States Immigration and Naturalization Service (INS) planned to conduct a "sweep" of Bay Area businesses to discover and deport illegal aliens. Torrigino supplied the INS with a list of Coastside employees whom he suspected were illegal aliens. In response, the INS informed Torrigino that two Coastside employees, Jose Gonzales and Aurelio Navarro, lacked proper immigration documentation. Torrigino discharged both employees. However, he later rehired Gonzales when Gonzales demonstrated that the INS had provided Coastside with erroneous information. Navarro, who was unable to present evidence of proper immigration status, was not reinstated.

Upon Navarro's discharge, Morales wrote a letter to Torrigino, dated November 17, 1981, concerning the discharge of the two employees. In that letter, Morales stated that Torrigino used "unfair tactics" and went out of his way to "intimidate, harass, and provoke" employees. Torrigino replied with a letter on the following day in which he explained the circumstances surrounding the discharges. On December 3, 1981, Morales wrote to Torrigino requesting formal arbitration of Navarro's termination.

In response, Torrigino wrote the letter containing the allegedly libelous statements which are the subject of this action. In that letter, written on December 10, 1981, Torrigino requested that Morales present him with reasons and information as to why Navarro's termination should be arbitrated. Torrigino closed the letter with this allegedly defamatory paragraph: "I am seriously considering filing charges against you with the N.L.R.B. for your continuing discrimination against American workers, coercion or attempted coercion of us as the employer to hire illegal aliens, and your consistent refusal to negotiate in good faith regarding these matters." Torrigino sent a copy of the letter to Coastside's attorney.

The trial court held the statements were not defamatory, were privileged and constituted protected opinion, and granted Torrigino's motion for summary judgment.

■ Publications issued during the course of labor disputes are accorded broader constitutional protections in order to secure the Labor Management Relations Act's (29 U.S.C. § 141 et seq.) policy of promoting full discourse between the parties to labor-management disputes. (*Linn* v. *Plant Guard*

*Workers* (1966) 383 U.S. 53 [15 L.Ed.2d 582, 86 S.Ct. 657]; *Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596 [131 Cal.Rptr. 641, 552 P.2d 425].) " '[S]ince such . . . disputes, realistically considered, normally involve considerable differences of opinion and vehement adherence to one side or the other, a necessarily broad area of discussion without civil responsibility in damages is an indispensable concomitant of the controversy.' " (*Gregory* v. *McDonnell Douglas Corp., supra,* at p. 602, quoting *Emde* v. *San Joaquin County etc. Council* (1943) 23 Cal.2d 146, 155-156 [143 P.2d 20, 150 A.L.R. 916].)

 A necessary prerequisite to recovery in a libel action is that the publication contain a false statement of fact (*Letter Carriers* v. *Austin* (1974) 418 U.S. 264 [41 L.Ed.2d 745, 94 S.Ct. 2770]; *Okun* v. *Superior Court* (1981) 29 Cal.3d 442 [175 Cal.Rptr. 157, 629 P.2d 1369]) as opposed to opinion, since the latter is not recognized as actionable in the libel context. (*Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323 [41 L.Ed.2d 789, 94 S.Ct. 2997]; *Okun* v. *Superior Court, supra; Gregory* v. *McDonnell Douglas Corp., supra,* 17 Cal.3d 596.)

The determination of whether the disputed libelous publication constitutes fact or opinion is a question of law. (*Letter Carriers* v. *Austin, supra,* 418 U.S. 264; *Gregory* v. *McDonnell Douglas Corp., supra,* 17 Cal.3d 596.) The courts have acknowledged that the line of demarcation between fact and opinion is not always clearly delineated, "and what constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of the communication taken as a whole. Thus, where potentially defamatory statements are published in . . . a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." (*Gregory* v. *McDonnell Douglas Corp., supra,* at p. 601.) In labor disputes "the judgment, loyalties and subjective motives of rivals are reciprocally attacked and defended, frequently with considerable heat." (*Id.,* at p. 603.) "[S]hort of accusations of crime or personal dishonesty, the First amendment protects even sharp attacks on the character, motives, or moral qualification of '. . . an active participant in a labor dispute.' " (*Okun* v. *Superior Court, supra,* 29 Cal.3d at p. 451, citing *Gregory* v. *McDonnell Douglas Corp., supra,* 17 Cal.3d 596, 604.) If an action for libel ensues as a result of such interchange, we must view it in that light.

 We note that the only person other than appellant who received a copy of the publication was respondents' attorney who represented them in their labor relations with appellant and his union. The labor lawyer obvious-

ly, and at least inferentially, had a grasp of the actual facts involved and was familiar with the history of animosity between the parties. As the sole member of the audience to whom the publication was broadcast, he reasonably would be expected to view it in a nonlibelous vein.[2]

■ Although a drastic remedy, summary judgment is a favored procedure for resolving First Amendment cases to avoid needless litigation which would interfere with the exercise of the free speech necessary for the continued existence of a free society. (*Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 251-252 [208 Cal.Rptr. 137, 690 P.2d 610]; *Good Government Group of Seal Beach, Inc.* v. *Superior Court* (1978) 22 Cal.3d 672, 684-685 [150 Cal.Rptr. 258, 586 P.2d 572].) ■ We conclude that the publication at issue consisted of protected opinion. Hence, it is unnecessary to reach the other contentions advanced by appellant.

The judgment is affirmed.

Low, P. J., and King, J., concurred.

---

[2]Our conclusion is further supported by the many cases in which language more offensive than respondent's has been held to constitute protected opinion. For example, in *Letter Carriers* v. *Austin, supra,* 418 U.S. 264, the United States Supreme court held that publication of Jack London's definition of "scab" containing the words "'traitor to his God, his country, his family . . .'" was not libelous. (*Id.,* at p. 268 [41 L.Ed.2d at p. 753].) In *Greenbelt Coop. Pub. Assn.* v. *Bresler* (1970) 398 U.S. 6, 13-14 [26 L.Ed.2d 6, 14-15, 90 S.Ct. 1537], the Supreme Court determined that the use of the word "blackmail" to describe plaintiff's negotiating position did not constitute libel. Similarly, the Supreme Court found in *Cafeteria Union* v. *Angelos* (1943) 320 U.S. 293, 295 [88 L.Ed. 58, 60, 64 S.Ct. 126], that the use of words "like 'unfair' and 'fascist'—is not to falsify facts" in the context of economic and political controversies. As a final example, the California Court of Appeal held in *Scott* v. *McDonnell Douglas Corp.* (1974) 37 Cal.App.3d 277, 283-284, that accusing a city manager of "'stoop[ing] to any form of action . . . to continue your stay in office'" and stating that under his administration, the city's affairs had descended to a "mutinous character" was not libelous. In view of the examples above, respondent's comments appear restrained.