Filed 3/16/16  Deutsche Bank National Trust Co. v. Clark CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PETER C. CLARK,<br><br>    Defendant and Appellant. | A138924<br><br>(Contra Costa County<br>Super. Ct. No. C12-00087) |

Defendant Peter Clark appeals from a summary judgment.  It is his second appeal following that ruling against him, the first appeal having been dismissed by us because Clark failed to procure the record.  Here, in this appeal, Clark has filed an opening brief that violates many settled principles of appellate review, a brief that essentially repeats the diatribe Clark has asserted throughout—a brief that fails to address the basis of the summary judgment against him.  Clark's appeal is manifestly lacking in merit, not to mention procedurally improper.  We affirm.

## BACKGROUND

### *The General Background, and Clark's Filings and Lawsuits*

This is an appeal from a summary judgment entered against Clark in favor of plaintiff Deutsche Bank National Trust Company (DBNTC).  That summary judgment was on DBNTC's complaint filed on January 13, 2012.  Before describing that complaint and the proceedings that followed it, some background is necessary to put the matter in context.

1

In 2005, Clark borrowed $640,000 from Allstate Lending Group, Inc., to refinance his house located at 1674 Pleasant Hill Road, Pleasant Hill (the property).  The loan was secured by a deed of trust on the property.  Section 20 of the deed of trust provided that "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

IndyMac Bank, FSB (IndyMac) was the original servicer on the loan.  In 2008, the Office of Thrift Supervision closed IndyMac and named the Federal Deposit Insurance Corporation (FDIC) as its conservator.  (See FDIC press release "PR-56-2008" (July 11, 2008).)  Then, in 2009, the FDIC sold most assets of the former IndyMac to OneWest Bank, FSB (OneWest) (See FDIC press release "PR-42-2009" (Mar. 19, 2009)), among which were the loans that IndyMac owned or which it serviced on behalf of others.  (See *Laguer v. OneWest Bank, FSB* (Mass.Super.Ct., Feb. 27, 2013, No. MICV2010-033353) 2013 WL 831055, p. 3, fn. 2.)

Meanwhile, in 2008, Clark defaulted on the loan, and a notice of default was recorded.  In early 2009, Quality Loan Service Corp. (Quality) was substituted in as the new trustee under the deed of trust, and a few months later recorded a notice of trustee's sale.

Thereafter, a series of assignments of the deed of trust were recorded, reflecting that the beneficial interest in the deed of trust transferred from Allstate Lending Group, Inc. to IndyMac to OneWest to DBNTC.  On October 20, 2009, DBNTC purchased the property at the trustee's sale.  And on November 4, 2009, a trustee's deed upon sale was recorded, conveying the property to DBNTC.

While some of the above was transpiring, Clark was active in bankruptcy court, filing at least two actions there.  The first was a chapter 13 proceeding filed in August 2009:  *In re Peter Carson Clark* (Bankr. N.D.Cal. 2009).  This bankruptcy action was dismissed on motion of the trustee for failure to file a declaration of exigent circumstances.  Clark filed a second bankruptcy petition in February 2010:  *In re Peter Clark* (Bankr. N.D.Cal. 2010).

2

Unaware of Clark's bankruptcy activity, shortly after the foreclosure sale, DBNTC posted a notice to vacate the property. Clark refused to leave, so DBNTC filed an unlawful detainer action against him: *Deutsche Bank National Trust Company v. Clark* (Super. Ct. Contra Costa County, 2010, No. CS10-0170). Clark contends this violated the bankruptcy stay.[1] However, in April 2010, the bankruptcy court granted DBNTC's motion for relief from the automatic stay, ordering the bankruptcy stay annulled retroactively to the petition filing date, as well as annulled as to all postpetition actions taken by DBNTC to obtain possession of the property.

In May 2010, Clark's chapter 13 case was converted to chapter 7. As a matter of caution, in July DBNTC filed a second motion for relief from the bankruptcy stay to confirm that no automatic stay applied to it. The bankruptcy court again "confirm[ed] that the automatic stay did not go into effect in this case with respect to the real property at 1674 PLEASANT HILL RD, PLEASANT HILL, CA 94523, despite the conversion of this case to a Chapter 7."

In December 2010, Clark was discharged from bankruptcy. And as best we know, the bankruptcy remains open, though the bankruptcy trustee's administration and liquidation of the estate's assets is apparently nearly complete.

In addition to his bankruptcy filings, Clark was also active in various courts seeking to challenge the foreclosure, filing no fewer than five lawsuits in state and federal court, specifically the following:

*Clark v. IndyMac Mortgage Services et al.* (Super. Ct. Contra Costa County, 2009, No. MSC09-03261), filed November 2009. This suit was dismissed in September 2010, because Clark failed to file an amended complaint after a demurrer was sustained with leave to amend.

---

[1] Clark acknowledges that the property was never part of his bankruptcy estate because DBNTC had already acquired title to the property. In his words, "the underlying [property] was not part of the Trust estate." (See 11 U.S.C. § 541 [estate property includes "all legal or equitable interests of the debtor in property as of the commencement of the case"].)

3

*Clark v. Deutsche Bank National Trust Company et al.* (Super. Ct. Contra Costa County, 2010, No. MSC10-01563), filed May 2010.  Clark moved to consolidate DBNTC's unlawful detainer action with this case.  That motion was denied, and Clark dismissed the action in July 2010.

*Clark v. Deutsche Bank National Trust Company et al.* (N.D.Cal. 2010), filed October 2010.  Clark dismissed this case in June 2011, after having unsuccessfully sought a temporary restraining order three times and reconsideration twice.

*Clark v. Deutsche Bank National Trust Company et al.* (Super. Ct. Contra Costa County, 2011, No. MSC11-02317), filed October 2011.  Here, Clark attempted to file a fraudulent "offer to compromise," purportedly agreed to by DBNTC, which the trial court rejected.  The case was dismissed in May 2012.

*Clark v. Boyle et al.* (N.D.Cal. 2012), filed July 2012.  The status of this case is unknown, and apparently Clark has not served any defendant in this suit.

### *The Subject Lawsuit*

The next lawsuit is the case before us here, a lawsuit brought against the background of a "grant deed" and a "settlement agreement" that had surfaced, documents most favorable to Clark, documents that DBNTC contended were fraudulent.  Specifically:

Along the way, Clark produced a grant deed and a settlement agreement, both of which, DBNTC asserts in its brief, were "prepared by Clark and signed by Karrolle Engleman."  DBNTC cites nothing in support of the "prepared by Clark" representation, but Clark has filed no reply brief, so the description remains unrebutted in the record.  As to the "signed by Karrolle Engleman," there is evidence that Engleman executed them as the "Authorized Signatory" for "DBNTC," which she registered as a fictitious business name for "Mortgage Assets Trust."

Investigation and discovery revealed that on March 29, 2011, Engleman created Mortgage Assets Trust as a Washington corporation.  She is its registered agent, as well as its sole listed director.  The day after Engleman formed it, Mortgage Assets Trust recorded a fictitious business name statement in Los Angeles County, claiming to do

4

business as "Deutsche Bank National Trust Company." Engleman signed the fictitious business name statement as the vice president of Mortgage Assets Trust.

On May 9, 2011, Engleman executed the grant deed and the settlement agreement as the "Authorized Signatory" of "Deutsche Bank National Trust Company." The next day, Clark recorded these instruments with the Contra Costa County Recorder's Office. The grant deed putatively conveys the property from DBNTC to Clark per the terms of the attached settlement agreement.

The settlement agreement was purportedly in settlement of the federal case mentioned above, *Clark v. Deutsche Bank National Trust Company et al.* (N.D.Cal. 2010), and the agreement purports to void the unlawful detainer judgment, the trustee's sale, and the trustee's deed upon sale. It also purports to grant Clark title to the property, while at the same time forgiving the $640,000 loan. While signed by Clark and Engleman, the document is not signed by any attorney representing DBNTC in the litigation it says it is settling. More importantly, the settlement agreement is not signed by any person authorized by the real DBNTC to do so.

In addition to the unusual—perhaps fantastical is a better word—content of the settlement agreement, Clark did nothing to indicate its validity, nothing that one would expect in light of a valid settlement. For example, Clark did not file a notice of settlement in the federal case. In fact, after the settlement agreement was signed, in June, DBNTC filed a motion to dismiss the case. Clark made no effort to notify the district court that the motion was either moot because of the agreement or was filed in violation of it. Rather, Clark dismissed the lawsuit without prejudice shortly after the motion to dismiss was filed, making no mention of the settlement. Despite ostensibly acquiring the property, Clark never amended his bankruptcy schedules to list the acquisition of this significant asset. And despite the supposed settlement agreement with DBNTC, Clark nevertheless filed another lawsuit against it just a few months later.

On January 13, 2012, DBNTC filed a verified complaint against Clark and Engleman, asserting four causes of action, for: (1) cancellation of deed; (2) quiet title; (3) slander of title; and (4) injunction.

5

Engleman never responded to the complaint and the trial court entered her default on May 10, 2012.

Following Clark's answer, DBNTC filed a motion for summary adjudication of its first cause of action to cancel the grant deed and settlement agreement and its fourth cause of action to enjoin Clark from recording other documents in DBNTC's name. DBNTC dismissed its causes of action for quiet title and slander of title.

Clark filed an opposition (however untimely) to the motion along with his declaration and a separate statement of undisputed material facts.

On March 6, 2013, the trial court issued a minute order granting the motion as to both causes of action and granting summary judgment. On March 18, before the court had entered a formal order or judgment, Clark filed a notice of appeal, designated in this court case No. A138154.

On April 12, 2013, the trial court entered a formal order granting summary judgment and also a judgment that canceled and expunged the grant deed recorded on May 10, 2011, and enjoined Clark from executing or recording any documents in DBNTC's name. On April 16, 2013, DBNTC served notice of entry of judgment.

As discussed in detail below, on April 22, 2013, we dismissed Clark's appeal in case No. A138154, due to his failure to designate an appellate record. Clark took no action to resurrect that appeal. Instead, on June 10, Clark filed a second notice of appeal, commencing this appellate proceeding, designated case No. A138924. On June 24, we issued a remittitur terminating Clark's appeal in case No. A138154.

## DISCUSSION

As indicated, after the trial court announced its intent to grant DBNTC's summary judgment and issued a minute order to that effect, but before a formal order and judgment, Clark filed a notice of appeal, commencing case No. A138154. That appeal was technically premature, as taken from a nonappealable order.

That said, many courts have treated such an appeal as being from a judgment and have addressed the appeal on the merits. We ourselves have done this. (See *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761–762; *Minor v. Municipal Court*

6

(1990) 219 Cal.App.3d 1541, 1546, fn. 2 ["We follow the now common practice of deeming the premature notice filed . . . as referring to that [later] judgment."].)  So have our colleagues in Division Four.  (*Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1, 5).  And Three.  (*Classen v. Weller* (1983) 145 Cal.App.3d 27, 34, fn. 1).  And Five.  (*Morales v. Coastside Scavenger Co.* (1985) 167 Cal.App.3d 731, 733, fn. 1).

In fact, in Clark's first appeal here, in case No. A138154, we treated Clark's appeal as appropriately before us, never advising him that he had appealed a nonappealable order.  To the contrary, we sent Clark a notice that he was in default on his appeal for failing to procure the record.  Clark did not cure the default, and on April 24, we dismissed Clark's appeal with the following language:  "Appellant having failed to procure the record on appeal within the time allowed or within any valid extensions of time, and having failed to apply for relief from default, the appeal filed on March 18, 2013 is dismissed."  The dismissal order did not expressly state that it was made without prejudice to the right of Clark to take another appeal.  As noted, we issued our remittitur on June 24.

Code of Civil Procedure section 913 provides as follows:  "The dismissal of an appeal shall be with prejudice to the right to file another appeal within the time permitted, unless the dismissal is expressly made without prejudice to another appeal."  Our dismissal order did not expressly state otherwise.  It was with prejudice.

As DBNTC candidly acknowledges, "the rule precluding a second appeal does not apply where the first appeal is void or the initial appeal could not have proceeded on the merits."  But that rule does not apply here.  While Clark's first appeal was premature, it was not void and could have proceeded on the merits, as have numerous other appeals, including in the cases cited above.

In sum, Clark was notified in his first appeal that he needed to designate a record on appeal, and warned his appeal would be dismissed if he did not.  When we dismissed his appeal, Clark took no action to attempt to set aside the dismissal, and that dismissal became an affirmance when we issued its remittitur.  Dismissal of Clark's first appeal precludes

this second appeal here.  (*Property Owners of Whispering Palms, Inc. v. Newport Pacific, Inc.* (2005) 132 Cal.App.4th 666, 677; *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1017–1018.)

This district applied the rule in 1927, in *Howard v. Howard* (1927) 87 Cal.App. 20, 25.  The Supreme Court applied it as early as 1860, in *Chamberlain v. Reed* (1860) 16 Cal. 207, where the court held as follows:  "Where an appeal regularly taken is dismissed for want of prosecution, the dismissal operates as an affirmance of the judgment, and a second appeal cannot be allowed.  The only mode of avoiding the consequences of such dismissal is to move, during the term or before the *remittitur* has gone out, to vacate the order and reinstate the cause."  And also in *Garibaldi v. Garr* (1893) 97 Cal. 253.

We add that preclusion of Clark's second appeal is a particularly proper outcome here, as Clark's brief violates many principles of appellate review.  As indicated, the essence of the summary judgment was the invalidity of the grant deed and the settlement agreement.  And the trial court ruled for DBNTC that there was no triable issue of material fact that either Engleman or Mortgage Assets Trust had any affiliation or relationship to the real DBNTC or that OneWest authorized Engleman to act as its agent or to sign the documents on DBNTC's behalf.  Clark's opening brief offers no cogent argument or analysis about either claim, with almost no treatment of the evidence related to the invalidity of the grant deed and the settlement agreement.

The first half of Clark's brief is devoted to his assertion, however unfounded, that DBNTC is in reality OneWest, and that OneWest has violated many laws and obligations.  This is followed by a nine page "summary" setting out matters not germane to the appeal.  There is no "argument" as such, with Clark's headings asserting only claimed "Mistakes of law" and "Mistakes of Facts."  Indeed, Clark's only attempt at an argument is a cursory assertion that "[DBNTC] certainly did not prove all elements, as required for summary judgment," and that the trial court made a mistake of fact in relying on the trustee's deed upon sale.  Neither point is developed in any way and we properly ignore them.  (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [arguments that are "perfunctorily" asserted summarily rejected]; *Evans v. Centerstone Development Co.*

8

(2005) 134 Cal.App.4th 151, 160; *People v. Crosswhite* (2002) 101 Cal.App.4th 494, 502, fn. 5 ["reviewing court may disregard claims perfunctorily asserted without development and without clear indication they are intended to be discrete contentions"]; California Rules of Court, rule 8.204(a)(1)(B) [each brief must "State each point under a separate heading or subheading summarizing the point, and support each point by argument, and . . . citation of authority"].)

As described in the leading appellate treatise:  "The Rules of Court governing the form and content of appellate briefs are *mandatory* and *strictly enforced*.  Failure to adhere to the Rules could be disastrous for an appeal . . . . Moreover, there is *no leeway for self-represented parties*.  A self-represented party on appeal 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys . . . Thus, as is the case with attorneys, pro per litigants must follow correct rules of procedure.' [*Nwosu v. Uba* (2004) [122 Cal.App.4th 1229, 1247] (internal quotes omitted)—several deficiencies in pro per appellant's opening brief resulted in waiver of issues on appeal; *Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 524 . . . [citations].]"  (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 9:7, p. 9-2.)

On top of all that, the summary judgment was right.  Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  As applicable here, a moving plaintiff can meet its burden by demonstrating that there is no defense to the cause of action, and does so by proving each element of the cause of action entitling the party to judgment on that cause of action. (Code Civ. Proc., § 437c, subd. (p)(1).)  Once the plaintiff meets that burden, the burden then shifts to the defendant to show the existence of a trial issue of fact.

The standard by which we review an appeal from an entry of summary judgment is well established.  We summarized it in *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253–254, as follows:  "On appeal '[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable

9

dispute warrant judgment for the moving party as a matter of law. [Citations.]'
[Citation.] Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that [defendant has no defense to the action]."

Here, the trial court entered a comprehensive seven-page order that addressed in detail the remaining causes of action, the first, for cancellation of a deed, and the fourth, for an injunction. The trial court analyzed the elements of both causes of action and concluded that DBNTC met the requisite elements in each. The trial court also concluded that "Defendant Peter Clark does not dispute that on May 10, 2011, a document purporting to be a deed was recorded in [the] Contra Costa County Recorder's Office, purporting to convey DBNTC's interest in the property back to Clark ('the Purported Deed'). The Purported Deed was executed by Karrolle Engleman, who purports to be an "Authorized Signatory" for DBNTC. . . . It is also undisputed that the basis for Peter Clark's contention that the Purported Deed is valid is that Engelmann [*sic*] signed the fictitious business name statement. . . . Engleman was not, at any time, an employee of DBNTC."

Then, following exposition of the law of injunctions, the trial court concluded that DBNTC met its burden, going on to conclude as follows: "The Court's determination is based upon its finding that the Purported Deed is void, that if left outstanding it is likely to cause DBNTC harm, and that DBNTC is entitled to equitable relief because an injunction is the only way to prevent a multiplicity of proceedings arising out of Defendants' fraudulent conduct in continuing to purportedly act on behalf of [DBNTC]. [¶] DBNTC is the owner of the property located at 1674 Pleasant Hill Road, Pleasant Hill, California, 84523 (the 'Property'), by virtue of a Trustee's Deed Upon Sale recorded on November 4, 2009. On May 10, 2011, a deed was recorded in the Contra Costa County Recorder's Office (the 'Purported Deed'), purporting to convey title to the Property from DBNTC back to Defendant Peter Clark ('Clark'), the former owner of the Property. The Court finds that the Purported Deed was executed without any authority from DBNTC, and thus was void. The Purported Deed was signed by Defendant Karrolle Engleman ('Engleman'), who had previously filed a fictitious business name

10

statement on behalf of Mortgage Assets Trust, a Washington corporation, stating this entity's intent to do business under the fictitious business name 'Deutsche Bank National Trust Company.' Neither Engleman or Mortgage Assets Trust have any affiliation or relationship to DBNTC, the grantee under the Trustee's Deed, who would not need to file a fictitious business name statement to transact business [under] its own name. Defendants' conduct to date demonstrates that, unless enjoined, Defendants are likely to continue to fraudulently execute documents purportedly on behalf of DBNTC, and thus equitable relief is required to prevent a multiplicity of actions." The trial court then cited to three pages of evidence supporting its conclusions.

Clark offered no evidence below that Engleman was authorized by DBNTC to do anything, and his brief here is absolutely silent on the subject.

## DISPOSITION

The judgment is affirmed.

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Miller, J.

A138924; *Deutsche Bank v. Clark*